(137 So. 182)

## ELMORE v. STATE.
### 8 Div. 125.

Court of Appeals of Alabama.
Feb. 17, 1931.

Rehearing Granted Apr. 21, 1931.

State's Rehearing Denied May 5, 1931.

Affirmed on Mandate Nov. 3, 1931.

R. B. Patton, of Athens, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. S. Lawson, Asst. Atty. Gen., for the State.

RICE, J.

The rule prevailing in this state with reference to the admission in evidence, etc., of testimony as to confessions by an accused was well stated by this court in the opinion in the case of Carr v. State, 17 Ala. App. 539, 85 So. 852. We do not find, after a careful study of this record, that said rule is shown to have been violated in any respect in the trial of appellant.

His ingenious counsel has filed a very interesting brief in his behalf, but, giving fair consideration to what is said therein, we are of opinion, and hold, that no reversible error anywhere appears. Detailed narration of the evidence will not be indulged, nor will separate treatment of the few exceptions reserved be undertaken.

The case is a simple one, involving a conviction of the offense of the illegal possession of prohibited liquor, to wit, whisky. Nothing new or novel is presented.

The oral charge of the court, in connection with the several written charges, given at appellant's request, fully covered the rules of applicable law. The several written charges requested by appellant, and refused, have each been carefully examined. In each instance, unless the substance of the charge was confused, argumentative, incorrect, or abstract, we find same to have been fully covered by the given charges.

The judgment of conviction is affirmed

Affirmed.

On rehearing.

BRICKEN, P. J.

It is clearly apparent that the purported confession of this appellant was superinduced, not from volition—as the law requires—but was the result of the threat of the sheriff that, if this defendant (appellant) did not admit the ownership of the whisky found buried in the cornfield some distance from the home of his mother, he would arrest both this defendant and also his mother, and that, in order to save his own mother from the threatened arrest, the defendant made the statement that it was his whisky. The "Statement of Facts" contained in brief of appellant has been verified by the record and is fairly stated. The facts are as follows:

### "Statement of Facts

"The defendant was tried on charge of having prohibited liquors in his possession. The defendant was a young man, and was living in the home of his parents, operating a small store in one corner of the yard. The father, at the time the liquor was found, was serving a sentence in the penitentiary; the mother was at home cultivating the farm; the law enforcement officer, together with the sheriff's force, searched the store of the defendant and found nothing. Later they searched the home of Mrs. Elmore, the mother, and found nothing, but out in the cornfield they discovered buried a jug of liquor. This jug of liquor was in the field operated by Mrs. Elmore, and the defendant was never known to have even been in the field. The

home was between the store where the defendant worked and the cornfield where the liquor was found. After the liquor was found the sheriff had a conversation with the defendant, 'I stated to the defendant that we were going to arrest him and his mother both. I stated that to the defendant before he said it was his liquor.' The sheriff further testified: 'I don't remember whether it was right there or later, anyway I asked Mrs. Elmore if it was hers, and she said no, and I said under the circumstances I will have to make cases against both of you.' Then the court asked the witness what happened, and the sheriff testified that Luther and his mother went into the house together, and called him to the front door, and Luther (defendant) then said it was his whisky, and Mrs. Elmore said 'You won't take me to jail will you?' The Court permitted the confession of the defendant to go to the jury over the objection of the defendant, and the jury found the defendant guilty."

A decision by this court, exactly in point, is that in the case of Gidley v. State, 19 Ala. App. 113, 95 So. 330, opinion by Samford, J., wherein it was said: "The court in determining admissibility of a confession should be careful to ascertain that such confession proceeded from volition, and that it was not superinduced by any influence improperly exerted. If the confession in this case was obtained by reason of the threat of the sheriff that, if defendant did not admit the ownership of the whisky, he would wait and arrest defendant's son-in-law, it should not have been admitted." See, also, Carr v. State, 17 Ala. App. 539, 85 So. 852.

To the same effect is the opinion in Curry v. State, 203 Ala. 239, 82 So. 489, beginning on page 492, wherein the Supreme Court says:

"The question presented for decision is, when the whole confession of defendant is considered in the light of his immediate surroundings and circumstances, having due regard for his age, character, and mental qualifications, is said confession involuntary? In Owen v. State, 78 Ala. 425, 428, 56 Am. Rep. 40, Judge Stone thus stated the rule of vitiating influence of promises or threats affecting confessions of defendants:

" 'Any, the slightest, menace or threat, or any hope engendered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with, if he will confess—either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner, which may, in their nature, generate such fear or hope render it not only proper, but necessary, that confessions made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made, after all trace of hope or fear had been fully withdrawn, or explained away, and the mind of the prisoner made as free from bias and intimidation as if no attempt had ever been made to obtain such confessions. And when a confession has been once obtained after appliances of hope or fear, any subsequent confession must alike be excluded, until the prisoner's mind is fully and clearly disabused in the manner suggested above, and until it is fairly explained to him that the confession previously made cannot harm him, nor be given in evidence against him. Less than an entire obliteration of all ground of hope or fear previously engendered will not meet the severe requirements of the law; and trial judges could not well be too strict in the enforcement of this rule.' "

The application for rehearing is granted. Judgment of affirmance set aside. Reversed and remanded.

SAMFORD, J., concurs.

RICE, J. (dissenting).

"It is settled law that when a confession is offered in evidence against a defendant in criminal trial, the duty devolves upon the court to ascertain and declare by its ruling whether or not such confession was free and voluntary. When confessions have been admitted as evidence against a defendant's objection, the presumption is in favor of the correctness of the ruling of the trial court, on appeal, and reversal will not be had because of the admission of such evidence, unless the record affirmatively shows that manifest error was committed in the admission of such evidence." Curry v. State, 203 Ala. 239, 82 So. 489, 492, citing Price v. State, 117 Ala. 113, 23 So. 691; Wilson v. State, 191 Ala. 7, 67 So. 1010; and Sharp v. State, 193 Ala. 22, 26, 69 So. 122.

We quote the essential parts of the testimony on the part of the state, with regard to the alleged "confession" of appellant, to wit:

"(J. E. Clem, Jr., the Sheriff, testifying) I know the defendant, Luther Elmore, and know where he lives; I was at his house in July 1929; I saw some liquor around the premises where he lived; it was buried out in the garden or corn field near his house, in a five gallon jug, with several gallons of whisky in it. It was buried in the corn patch about twenty or thirty yards from the house where Luther lived. I had a conversation with the defendant with reference to the liquor.

"At the time of the conversation with the defendant I was at the home of his mother, Mrs. Elmore, and at the defendant's store. I think Mrs. Elmore owned the property or it was owned by her husband. At the time of the conversation I did not have Mrs. Elmore under arrest; Mr. Gilbert, the State Law Enforcement Officer, and my two depu-

ties, Ralph Pugh and Bernard Arnett were present; if they were holding Mrs. Elmore I do not know it. I stated to the defendant that we were going to arrest him and his mother both. I stated that to the defendant before he said it was his liquor.

"Before we had the conversation we had found the whisky.

"They (Luther and his mother) were living there in the same house together.

"When I found the whisky I went out to the store where Luther was—about 40 or 50 yards from where the whisky was found— about 20 or 30 yards from the house.

"I said I had found some liquor out there, and asked him whether it was his, and he said no.

"I don't remember whether it was right there or later; any way, I asked Mrs. Elmore if it was hers, and she said no. And I said, under the circumstances I will have to make a case against both of you.

"They went into the house—Luther and his mother. They called me to the front door. Luther said it was his whiskey. And Mrs. Elmore said: 'You won't take me to jail will you?' and I said no, not if Luther says it is his. After that I arrested the defendant. He said it was his whiskey before Mrs. Elmore said: 'You won't arrest me will you, I told her no, not if Luther claimed it.'"

There was some slight conflict in the state's testimony, and that of appellant, regarding the circumstances of the "confession" by appellant, but it was open to the trial court to legitimately find and conclude that they were as shown by the above-quoted testimony of the witness Sheriff Clem.

From a careful examination of the testimony in the case, we are far from being able to say—with reference to that of the "confession"—that "the record affirmatively shows that manifest error was committed in the admission of such evidence."

The evidence clearly excludes any "promises or threats," or any other "improper inducements," used by the witnesses on the part of the state, or any others, to obtain the said confession.

True, it is rather clearly apparent that the "motive" appellant had, in making the confession, was to save his mother from arrest. But, "if the confession is free and voluntary, the motive which prompted it is, as a general rule, immaterial as affecting its admissibility." 16 C. J. 719.

Or, as held by the Supreme Court of California, "a voluntary confession is not inadmissible because it was made to free another person (in that case defendant's sister) from suspicion." People v. Smalling, 94 Cal. 112, 29 P. 421.

We are yet of the opinion that under the rule stated in the case of Carr v. State, 17 Ala. App. 539, 85 So. 852, cited in our original opinion, which conforms to that outlined by the Supreme Court in the case of Curry v. State, supra, and other cases, we are unable to say that the trial court erred in admitting the testimony as to appellant's confession, in this case.

We have been led to extend our remarks, perhaps unduly, by the very earnest argument of appellant's able counsel that reversible error is shown in the trial court's ruling in the particular discussed.

All that appears above was prepared by the writer, for the court, but, after consideration, my brother SAMFORD announces his concurrence in the views expressed, on rehearing, by BRICKEN, P. J., so this opinion by me merely states my reasons for dissenting from the order granting appellant's application for rehearing, and reversing the judgment of conviction.

On Application for Rehearing by the State.

PER CURIAM.

Application for rehearing overruled.

RICE, J. (dissenting).

I would like to add, upon the overruling of the state's application for rehearing, that my views, above, seem to me to have the support of the Supreme Court, in the opinion in the case of McKinney v. State, 134 Ala. 134, 32 So. 726, 727, where they say: "In a criminal case, a confession that is made on a promise of some collateral benefit to the defendant, no hope or favor being held out in respect to the criminal charge against him, is not considered involuntary, and is therefore admissible in evidence."

In this case, as stated, I do not think the testimony shows a "promise or threat," etc. to the defendant. But if it did, it could only be as regards a "collateral benefit to the defendant."

I think the application by the state for a rehearing should be granted, the order of reversal set aside, and the judgment of conviction affirmed.

PER CURIAM.

On certiorari of this case to the Supreme Court, a majority of that court were not in accord with the decision rendered by this court on the one point involved. That majority opinion, under the law, must prevail, and by express terms of the statute the decision of this court must accord thereto. Section 7318. Code 1923; Ex parte Louisville & N. R. R. Co., 176 Ala. 631, 58 So. 315.

It follows that an affirmance of the judgment from which this appeal was taken must be here ordered upon authority of Elmore v. State, 223 Ala. 490, 137 So. 185.

Affirmed.