66 So.2d 771

**FEWELL v. STATE.**

**6 Div. 483.**

Supreme Court of Alabama.

June 30, 1953.

Rehearing Denied Aug. 6, 1953.

———◆———

Winton G. Wilson, Birmingham, for appellant.

402

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

STAKELY, Justice.

Stanford Ellis Fewell (appellant) was indicted for the offense of murder. Upon a plea of not guilty trial was had and the jury returned a verdict of guilty of murder in the second degree and fixed punishment at 30 years imprisonment. The court adjudged appellant guilty and sentenced him accordingly. This appeal is from that judgment and sentence.

Phyllis Dean Carver, nine years of age, left home in the afternoon of Sunday, April 10, 1949, with her mother and sister to attend the movies. Her mother and sister went to one show while she supposedly attended another. When she failed to return, there was a search for her and her mutilated body was found around 8:00 o'clock on Monday morning. From the condition of the body death was placed by the state toxicologist at six or seven o'clock on the previous evening. The child had been slashed several times. Her lips were bruised and swollen and her scalp lacerated. Her throat was cut and she had been stabbed in the chest. The anus was abnormally distended and there was evidence of semen therein.

According to their testimony, the appellant was seen by Myrtle Mitchell and Billy Mitchell between 7:00 and 7:20 A.M. on the morning on which the body was found. According to these witnesses the appellant told them that the child had been killed. According to tendencies of the evidence this statement by the appellant was before the body of the child was found. Tendencies of the evidence showed that the appellant had scratches on his hands on the day of the funeral. He is a first cousin of the mother of the deceased child.

There was testimony in behalf of the appellant which places him at the home of Mrs. Jessie Mae Tubbs from around noon on Sunday until early Monday morning. According to other testimony for the appel-

lant, he was seen early Monday morning at or near the Tubbs' home several miles from where the Mitchells said they had seen him. There was also testimony for the appellant tending to show that there were no scratches on his hands on the day of the funeral.

The appellant was in the army at the time of the killing and was home on leave. He returned to his station a few days later and subsequently served in Korea. He was taken into custody at Ft. Hood, Texas, in the spring of 1952 and questioned concerning the killing. He was questioned at Ft. Hood, Texas and later in Birmingham, Alabama. He made four statements. Two of these statements implicated his brother as the last person seen with the child and in two of these statements, he stated that he, himself, did the killing.

■ On April 10, 1952, the appellant was first questioned concerning the killing. The questioning was carried on by Capt. O'Connell, an army officer, and B. M. Dinken, a Deputy Sheriff of Jefferson County. The questioning was at various intervals from April 10th to April 15th. On April 14th according to the witness Dinken, the appellant stated he was ready to make a statement. Dinken left the room and Capt. O'Connell took over. According to tendencies of the evidence, O'Connell told appellant that unless he made a statement, he (O'Connell) would haunt him while he was in the army and that Dinken would be on the outside. According to Clancey Lake, a reporter of a Birmingham newspaper who was present, B. M. Dinken told appellant that appellant's mother was "on the cold steel." According to appellant this meant to him that his mother had been arrested. As to this we are not clear. It is clear that B. M. Dinken told appellant that he had talked to appellant's mother in Houston where she was living with Mr. Clay, whom she had married, that his mother had gone with him and Clancey Lake to Police Headquarters in Houston in order to see some pictures they had of the girl and that was where B. M. Dinken had talked to her. After Capt. O'Connell and B. M. Dinken had talked to appellant and asked him to make a statement, appellant said he wanted

to sleep on it and was permitted to go back to bed. Next day appellant stated that he wanted to tell the truth. His constitutional rights were then read to him as provided by the Uniform Code of Military Justice, 50 U.S.C.A. § 551 et seq. He then made a statement in which he stated in substance that the last time he saw Phyllis Dean Carver, the deceased, she was with his brother. It is true that after the four statements had been introduced in evidence appellant testified that he was told by B. M. Dinken that his mother would be released from jail if he would make a statement, and it was after this that he made his first statement, but there was no renewal of the objection at that time to the evidence already introduced or any part thereof.

On April 21st the appellant with B. M. Dinken, the Deputy Sheriff, in company with Clancey Lake started to Birmingham from Ft. Hood, Texas. On the way to Birmingham Lake was driving and Dinken and appellant were on the back seat. The testimony is in conflict as to whether Dinken struck Fewell or not. Lake, the driver, testified that he heard a noise like a slap. Dinken testified that appellant kept hitting himself with his handcuffs, raving and carrying on in general. Appellant testified that Dinken hit him with his fist and with his pistol holster. According to Lake he did not see Dinken slap Ellis. According to tendencies of the evidence, appellant made an oral statement while on the back seat of the car with Dinken in which he admitted killing the girl himself. This statement appears in the record and is somewhat lengthy. In this statement he told conflicting stories about stealing a car in which he took the girl to the scene of the crime and about hiding the knife following the killing. When the party arrived in Birmingham appellant directed them to the scene of the crime.

A third statement was made by the appellant in the solicitor's office on April 23, 1952. This statement was dictated in question and answer form to Mr. Dickinson, a court reporter in the solicitor's office. This statement was not signed by the defendant, but the court reporter testified that the

words taken down and transcribed by him were the words of the appellant. In this statement the appellant again confessed that he killed the girl. He detailed the activities of his brother and himself on the afternoon of the killing. According to this statement the two boys had some drinks, stole a car and picked the girl up in front of the Ensley Theatre. They rode around several blocks in Ensley and then they drove out to Bayview and that is where he killed the child. He killed her with a knife and said that he killed her at the edge of Bayview Lake, where the body was found. He said that they turned off the road and the child began to complain. He struck her in the mouth, then he went on that road and he said "my brother was driving". They went up this little road, turned to the left and parked and that is where I killed her with a knife. He said his brother didn't take any part in it. Previously while riding around the girl threatened to tell her father that appellant's brother was running around with her mother and this is when appellant hit her in the mouth.

According to Clancey Lake, the court reporter had left to type up his notes and the appellant then stated that his statement was a pack of lies, that he did not do it and that he was confused. However, there is testimony tending to show that at the time this statement was made that no threats were made to appellant and no inducements were offered appellant to get him to make such a statement.

A fourth statement was made on April 30th in the Jefferson County Jail. This was made in Birmingham to Mr. Scharnberg, a C. I. D. Officer. It was written by Scharnberg and signed by the appellant. In this statement appellant again went back to the story that his brother drove off in the car with the Carver girl.

It will be noted that prior to the first statement, which is not a confession of guilt by the appellant, the most which can be said for the defendant is that it was made in response to a promise of a collateral benefit to the defendant. There is no evidence which shows that this statement was made in response to a promise to the defendant or with any offer or hope ex-

tended to the appellant in regard to the charge against him. In Hunt v. State, 135 Ala. 1, 33 So. 329, the appellant was implicated with several others in a murder. During his questioning the appellant said: "If you save me from these boys, I will tell you the truth." The officer who was doing the questioning then said, "All right. We will save you. We will have Orrin Thomas arrested." In that case this court held that this was merely a promise of a collateral benefit and had no effect in regard to the charge against the appellant and hence his confession made after that promise was voluntary and admissible.

In McCullars v. State, 208 Ala. 182, 94 So. 55, the sheriff in questioning the defendant discussed family matters with the defendant. He told him that he had always been a friend of his daddy's and that he would always be a friend to him. He stated that he could not help the defendant officially, but if the defendant would make a statement, he would be his friend throughout the proceedings. The court held that this was not such a promise as would render the confession inadmissible.

We are not satisfied that the statement was induced by the hope that defendant's mother would be released from jail. In fact we are not satisfied that we can say from the evidence that she had been arrested or that he thought that she had been arrested. The evidence in this aspect of the case is not sufficient to bring the statement within the conditions which should lead to its rejection. Elmore v. State, 24 Ala.App. 522, 137 So. 182, reversed 223 Ala. 490, 137 So. 185.

■ The first statement made by appellant represents an unsuccessful effort to obtain a confession. The fact that an unsuccessful attempt to secure a confession is made, does not render a confession subsequently made inadmissible, if it is voluntarily made to another person. McAdory v. State, 62 Ala. 154; Levison v. State, 54 Ala. 520. However in this case the confession made to Dinken was eight days after the unsuccessful attempt to get a confession at Fort Hood, when appellant was voluntarily returning to Birmingham, Alabama. O'Connell was not present at the

time but there is nothing in the evidence which in any way indicates that any statement that Dinken may have made about appellant's mother had anything to do with the confession made in the automobile. Later on in the trial of the case Mrs. Ozella Clay, the mother of appellant, testified in his behalf and in an effort to establish an alibi for appellant, but there is not one word in her testimony which in any way indicates that she was ever arrested or put in jail.

■ There was a conflict in the evidence as to the voluntary character of the second statement growing out of the action claimed to have been taken by Dinken in the automobile, but such action, as we have said, was not in any way connected with any statements made by him at Fort Hood. This court has held that the court's decision allowing a confession in evidence will not be disturbed unless it appears that it is palpably contrary to the great weight of the evidence. Vernon v. State, 239 Ala. 593, 196 So. 96. We are satisfied that the finding by the court that the appellant was not abused in the automobile and that the confession was not in any way induced by any promise of reward or threat to appellant, does not constitute a finding contrary to the weight of the evidence and accordingly the ruling of the court in admitting the oral statement made in the automobile was not in error. We are satisfied that the influences, if any, of statements made by O'Connell and Dinken prior to the first statement by the appellant, were sufficiently removed.

■ . As to the third statement which was made in the office of the solicitor in Jefferson County, there is no proof of any threat or abuse or offer of reward. According to the record every effort was made by the solicitor to show that the statement which was made by the appellant in his office was voluntary with no abuse, with no threat and with no promise of reward. Under the evidence we consider that the confession made in the solicitor's office was voluntary and clearly admissible.

The fourth statement made by the appellant was not a confession. This statement did not implicate the defendant and did no more than place him in company with the child for a few minutes sometime during the afternoon of the day of the killing.

■ There was no error in admitting in evidence the photograph of the body of the deceased child. Wilson v. State, 31 Ala. App. 21, 11 So.2d 563, certiorari denied 243 Ala. 671, 11 So.2d 568.

We conclude that the sentence and judgment of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.