**Jack A. BUSH**

v.

**STATE.**

**6 Div. 423.**

Supreme Court of Alabama.

April 4, 1968.

Rehearing Denied May 2, 1968.

Rogers, Howard, Redden & Mills, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

The appellant stands adjudged guilty of murder in the first degree with punishment being fixed at imprisonment in the

penitentiary for life. The victim of the homicide was Nora Ann Bush, the wife of the appellant.

On the day of the killing the appellant returned to his home from his job as a mechanic for a Birmingham motor company. His wife was anxious to go out for the evening, in accord with prior arrangements with Mr. and Mrs. C. L. White. The appellant demurred, saying he was tired. According to the appellant, his wife had been drinking when he arrived home. The appellant finally agreed to join the Whites, and the Bushs drove to the White home arriving there between 7:30 and 8:00 P.M. At the White home the parties had one or more drinks and then proceeded to the Elks Club in Fairfield in the White's automobile. At the Club the two couples had dinner, and continued to have drinks. Following dinner, they danced. During the entire evening it is inferable from the record that Mrs. Bush, the deceased, was in an antagonistic attitude toward her husband, evidencing this antagonism by obscene and profane epithets addressed to him.

Shortly after midnight the Bushs and the Whites left the Elks Club, at the importuning of the appellant. Just before their departure Mrs. Bush poured a glass about two-thirds full of whiskey and drank it straight.

After leaving the Elks Club, the appellant drove the White's automobile, and the deceased occupied the front seat with him, the Whites occupying the rear seat.

On the drive from the Elks Club to the Bush's apartment, an argument developed between the appellant and his wife and Mrs. Bush grabbed the appellant's leg and pinched it severely. Thereupon the appellant struck at his wife with the back of his hand, resulting in a fingernail cut on his wife's nose. While this wound was small it caused considerable bleeding.

Arriving at the Bush's apartment, they drove to the rear. Mr. White and the appellant helped Mrs. Bush into the apartment kitchen where she was placed upon a table.

Mrs. White attempted to wash off Mrs. Bush's face and stop the bleeding from the nose wound. The appellant remonstrated with the Whites about their loud talking and noise and requested them to leave. When the Whites did not depart the appellant went into another room in the apartment and returned with a 22 cal. rifle. He again requested the Whites to leave and they did so. At this time, Mrs. Bush was still lying on her side on the kitchen table.

The Whites drove to police headquarters at Ensley and reported the situation to the police. Two police officers, Glenn and Chambers, went to the apartment. Receiving no answer to the knock on the front door, they entered the Bush apartment through the back door.

They found Mrs. Bush lying on her side on the table with a bullet wound near the inner side of her right eye. In the living room they found the appellant in a semiconscious state with a bullet wound on the right side of his neck. The evidence shows that the bullet exited in the mastoid process behind the appellant's left ear. The appellant could not speak and was bleeding from the mouth.

When the officers returned to the kitchen the appellant crawled into the kitchen. He then pointed his finger at his wife, and then at himself, and moved his thumb in a manner indicating the firing of a gun. The appellant then made motions with his hands indicating writing materials. At this time Officer Chambers testified he informed the appellant that anything he said could be used in court against him, and of his right to counsel. A pen and paper were given to appellant and he wrote thereon:

138

"Father

"Graysville

"J. R. Bush

"O R 45131"

Over appellant's objection, this writing was admitted into evidence as State's Exhibit B. Before leaving the apartment the appellant was advised that he would probably be charged with a felony.

The officers then called an ambulance and the appellant was conveyed to the Lloyd Nolan Hospital and the officers followed in their automobile.

Upon arrival at the hospital, the appellant received emergency treatment and was then taken to a hospital room.

Mrs. McMeans, the nurse in charge of the appellant, asked him his name, and he again made writing motions. Being furnished pen and paper, he wrote the following:

"I Jack Bush shot my wife Nora Ann Burleson 3309 Walnut Avenue S. W. Signed Jack Bush."

Over the appellant's objection, this paper was received in evidence as Exhibit D.

Shortly after the appellant was admitted to the hospital room, Det. Pierce of the homicide squad arrived, accompanied by Coronor Allen. Officers Glenn and Chambers and Mrs. McMeans, the nurse, were in the room at the time. Det. Pierce asked the appellant what had happened and again the appellant went through the writing motions with his hands. Being furnished with pen and paper, he wrote:

"My wife was a lady.

"I was a mad MaN and kill her."

This paper was introduced in evidence over the appellant's objection as Exhibit C.

At the same time appellant wrote on another piece of paper:

"Jack Bush

"Father

"J. R. Bush

"O R 45131

"Graysville"

This writing was received in evidence over appellant's objection as State's Exhibit E.

In his own behalf the appellant testified that the shot which killed his wife was fired accidentally. Upon the Whites' departure, he had returned to the table where his wife was lying in an attempt to assist her. He had laid the rifle on the table along side his wife. He noticed that some blood and water was about to run off the table onto the floor and he grabbed a towel to mop up the fluid. In doing this, he hit the rifle and grabbed it to prevent it from falling on the floor, and in this process the rifle discharged.

The appellant further testified that he did not remember being shot himself and did not remember anything that happened after his wife was shot until several days later.

Mrs. White testified that during the argument between the appellant and Mrs. Bush on the ride from the Elks Club to the Bush apartment, the appellant had stated to his wife that he was tired of her embarrassing him and he twice said that "he was going to shoot her between the eyes when he got her home." Mrs White's testimony in this aspect came in without objection.

Mr. White was also called as a witness by the state. It appears that Mr. White is hard of hearing. At one point during the argument between the Bushs, Mr. White asked Mrs. White what the appellant had said and she answered in a normal tone of voice and while no other conversation was going on in the car that "he had said he would put a bullet between her eyes when he got her home." The

above testimony by Mr. White was admitted over the strenuous objection of the appellant that the same was hearsay.

The record shows that Mrs. White at the latter part of the trial was recalled as a witness and was examined at length, but the matter of her informing Mr. White as to the appellant's statement concerning putting a bullet between Mrs. Bush's eyes was not touched upon.

Counsel for appellant contends that error infects the record because of the court's action in overruling appellant's objection and allowing Mr. White to testify as to Mrs. White's answer to his inquiry concerning what appellant had said to his wife. Counsel for appellant asserts that this evidence was pure hearsay.

Counsel for the state counter this argument with the theory, argued at length, that Mrs. White's statement was in the presence of the appellant, was spoken in a normal tone, and was accusatory in nature and appellant's silence was a tacit admission of its truthfulness.

■ We see no need to write to the state's argument in that we are of the opinion that no error attached to the ruling in this instance for the following reasons.

Mrs. White had testified without objection as to appellant's statement to his wife. Mr. White's testimony was of the same import. It was therefore but cumulative of Mrs. White's testimony.

■ It is not error to allow the same facts to be again shown against objection when they have already been proven without objection. Purser v. State, 39 Ala.App. 169, 96 So.2d 689; Brown v. State, 33 Ala. App. 152, 31 So.2d 652; Zorn v. State, 20 Ala.App. 404, 102 So. 722. See also Alston v. State, 248 Ala. 163, 26 So.2d 877.

■ Further, as demonstrated by Wigmore, the essence of the Hearsay Rule is the requirement that testimonial assertions be subjected to the test of cross examination. See Wigmore on Evidence, 3rd Ed., Vol. V., Sec. 1362(2) at page 7.

■ Here Mrs. White had testified prior to Mr. White. She testified later in the course of the trial after Mr. White's testimony. Thus there was confrontation under oath, with a full opportunity to cross examine Mrs. White relative to the statement attributed to her by Mr. White, and to which she had already testified without objection. Thus the very basis and essence for invoking the Hearsay Rule is absent. Where the reason for a rule fails, the rule itself falls.

Counsel for appellant contend that the lower court erred in admitting Exhibits B, C, D, and E, being the notes written by the appellant under the circumstances above outlined.

■ Exhibits B and D are not inculpatory in any sense, and merely show the name, address, and telephone number of appellant's father. No probable injury to any substantial right of the appellant could have resulted from the admission of these exhibits.

■ In considering whether error to reverse resulted from the admission of Exhibits C and D, which are inculpatory, it must first be noted the trial of this case was begun on 11 October 1965, with a verdict being returned on 15 October 1965, the judgment being entered on that same day. The rules laid down in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, do not apply. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. Also, before the admission of these exhibits, a full voir doir examination was had out of the presence of the jury.

Counsel attacks the admission of these exhibits in two aspects, first, that the physical condition of the appellant at the time prevented their being voluntary, and second,

that the state failed to show the required predicate of voluntariness.

Relative to appellant's physical condition, Officers Glenn and Chambers testified that at the apartment the appellant appeared to be in deep shock, and was in this condition in the hospital room when they saw him write the notes which he gave to Det. Pierce.

On the other hand, Mrs. McMeans, the nurse, testified that at the time appellant wrote the note which he gave to her (Exhibit D), and at the time he worte the notes which he gave to Pierce (Exhibits C and B), the appellant was not, in her opinion, in a state of shock, nor under the influence of any sedative.

Dr. Leon C. Hamrick, of the Lloyd Nolan Clinic, testified that he saw the appellant around 11:00 A.M., on 25 October 1965, following his admission to the Clinic during the early hours of the same morning. Dr. Hamrick testified on direct examination in response to a question as, to whether a wound such as the appellant had suffered could have been fatal, replied that it could have been. Dr. Hamrick then added: "I think the question would be impossible to answer. In the general region, it could have been fatal."

Dr. Hamrick's remaining testimony shed no light on appellant's condition at the time he wrote the notes in question.

Appellant places much reliance on the Florida case of Reddish v. State (Fla.), 167 So.2d 858, wherein the Florida Supreme Court held involuntary confessions taken during the time the accused was suffering from a self-inflicted wound in the chest and under heavy sedation. The hospital records showed Reddish had been administered repeated doses of sedatives of a narcotic nature from the time of his admission virtually up to the time the statements were taken from him, and in fact had to be aroused from sleep at the time one of the confessory statements was taken.

■■ The facts depict no such situation in the present case. Although appellant's counsel argues that it should be assumed that the appellant was administered a drug, probably a narcotic in the emergency room of the hospital, we are unwilling to indulge this speculation in the absence of any evidence to this effect.

■ We hold that under the conflicting evidence we would not be justified in finding the lower court palpably wrong in concluding that the writings by the appellant were voluntary in light of appellant's physical condition at the time such writings were executed.

Det. Pierce and Mrs. McMeans testified that they did not inform the appellant of his constitutional rights prior to the time he wrote the notes given to them. Mrs. McMeans had merely asked the appellant his name, and Det. Pierce had asked him only "what had happened."

There was abundant evidence by the state tending to show that no one at any time made any threats towards the appellant, or offered him any inducement to make a statement. It is readily inferable from the record that from the first contact with people after the shooting, the appellant entertained the wish to make statements concerning the shooting, and being unable to talk, indicated his desire for writing materials.

■ It is, of course, fundamental under our decisions that prima facie a confession is presumed to be involuntary, and there must be evidence addressed to the trial judge sufficient to rebut this presumption and showing that the confession was made without the influence of either hope or of fear, *unless the attending circumstances affirmatively disclose the voluntariness of the confession.* Rudolph v. State, 275 Ala. 115, 152 So.2d 662; Duncan v. State, 278 Ala. 145, 176 So.2d 840; Emerson v. State, 281 Ala. 29, 198 So.2d 613.

As stated by Judge McElroy in his work on the Law of Evidence in Alabama, 2nd Ed., Vol. II, Sec. 200.13(5), p. 109:

"A formal predicate is not necessary (though as a matter of caution it is always advisable) when the circumstances testified to, 'affirmatively show' no improper inducements, that is, when the circumstances indicate pretty clearly that, according to the common probabilities of experience, the confession was not improperly induced.

"Further, in determining whether a statement by an accused is voluntary, a trial court is vested with a large discretion, and his conclusions in the premises will not be disturbed unless palpably wrong. Reeves v. State, 260 Ala. 66, 68 So.2d 14; Fewell v. State, 259 Ala. 401, 66 So.2d 771." Emerson v. State, supra.

We hold that the lower court did not err in concluding that the statements written by the appellant were voluntary under the facts and circumstances surrounding their execution.

Counsel for appellant contends the court erred in permitting the state's attorney to cross examine J. L. Brock, witness for the appellant, as to contradictions between his testimony on direct examination and a statement in writing, in question and answer form, that he had given to the Birmingham police later in the morning following the shooting.

Mr. Brock lived in an apartment adjoining the Bush apartment and his bedroom was separated from the Bush kitchen by a wall through which Mr. Brock testified he could hear conversations in the Bush kitchen.

Mr. Brock testified that he had made such a statement in the City Hall to the police officers at such time. Prior to being examined as to the statement, he was permitted to read it in full. While the state's attorney asserted that he was questioning Brock as to the statement in order to refresh his recollection, the court observed that he was permitting the examination both for the purpose of refreshing Brock's recollection and for the purpose of impeach-

ment, and that "anything read to the witness does not become testimony. His testimony is what he is testifying to here today."

While in one or two instances it would appear that the statement given by Brock to the police contained hearsay matter, objections to such portions were sustained and the court instructed the jury that they were not to consider the same.

Actually, the only two material differences between Brock's testimony on direct examination and the statement that he gave to the police were that in his direct examination he testified he heard Mr. Bush say to the Whites "you all leave," whereas in the statement he quoted Bush as saying "both you all get out of here," and further, in his direct examination Brock testified that he did not hear Mrs. White say anything about her purse as she was going from the Bush apartment to the White automobile, whereas, after reading the statement Mr. Brock testified that he did recall telling the police that "Mrs. White said something about her purse and Mr. Bush mumbled something."

■ We see no error on the part of the court in permitting the state's attorney to examine Brock as to such prior contradictory statements. Holley v. State, 105 Ala. 100, 17 So. 102.

Further, these contradictions, if such they be, were so immaterial in our opinion the appellant could not probably have been injured in any substantial right. Sup.Ct. Rule 45.

■ Counsel for appellant argues strenuously that the lower court erred in sustaining the state's objection to the admission of the written report prepared by Mr. Robert B. Johnson, a state toxicologist, showing the results of his examination of Mrs. Bush's blood. Mr. Johnson was called as a witness for the appellant.

Mr. Johnson was permitted to testify in full as to this test. He found the blood to contain .33 of one percent alcohol, and

normally such a percentage of alcohol in one's blood indicates a high degree of intoxication—"They wouldn't know where they were or what they were doing. They would be incapable of walking or talking. As a matter of fact, they would be in an alcoholic anesthesia. You could do a surgical procedure on them without rousing them or hurting them."

In addition to Mr. Johnson's testimony, there was much other testimony, uncontradicted, that Mrs. Bush was intoxicated and drinking heavily on the night in question.

We see no useful purpose in writing to appellant's technical argument that error infected the ruling of the court in refusing to admit the written report of Mr. Johnson. Abundant evidence, all uncontradicted, established the fact of Mrs. Bush's intoxication. No probable injury to appellant's substantial rights could have resulted from this ruling. Sup.Ct. Rule 45.

The court's oral instructions to the jury were full and adequate and constituted an excellent statement of the legal principles involved. The court concluded its instructions as follows:

"So, I will say this to you in the event that you find him guilty: Under our law, the purpose of punishment is twofold. First, it is to punish a person for his crime against society, and, second, it is to deter others from committing similar or like offenses. I just say that so that, in the event you find the defendant guilty, you will know the purpose for punishment in Alabama."

Counsel for the appellant reserved an exception to this portion of the instructions, and now argues that while the above portion of the court's oral instructions "probably states a correct principle," nevertheless coming at the end of the court's instructions, it amounted to an invitation by the court to find the appellant guilty.

Reading the full and fair instructions as a whole, we cannot agree with appellant's contentions. We know of no rule or requirement as to the sequence in which a trial court must state the principles involved when instructing a jury.

Counsel for appellant asserts as error the refusal of five written charges requested by the appellant.

We have carefully examined these charges in connection with the court's oral charge and the large number of written charges which were given at the appellant's request. We are clear to the conclusion that the principles sought to be enunciated in the refused charges were covered by the oral charge of the court or one or more of the given written charges. No error therefore results from the refusal of these charges.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.