BOWEN, Presiding Judge.
Jerry Lee Jones was indicted for the capital offense of robbery wherein the victim is intentionally killed. Alabama Code § 13-ll-2(a)(2) (1975). The jury found him guilty of the lesser included offense of murder in the first degree and fixed his punishment at life imprisonment.
This case arises out of the December, 1976, abduction, robbery, and murder of Quenette Shehane. The facts of this brutal crime have been recounted several times, see e.g. Thomas v. State (Ala.Cr.App. 1983); Neal v. State, 372 So.2d 1331 (Ala.Cr.App. 1979), and need not be repeated here for the issues on appeal concerned only the admissibility of Jones’ statement.
Jones gave an oral statement to Birmingham police officers on Sunday, February 13, 1977. In this statement, which was tape recorded and later transcribed, Jones admitted that he was present when Ms. Shehane was killed and that he helped remove a television and calculator from her car. He denied any involvement in the actual murder, stating that Wallace Norrell Thomas shot Ms. Shehane. This statement was introduced at trial after proof of the proper voluntariness predicate.
*994 Jones argues that the statement should have been excluded because it was tainted by an earlier statement which was illegally obtained. The earlier statement was given on Saturday, February 12th, and was “essentially the same thing” as the statement Jones gave on Sunday. Since the prosecutor did not attempt to introduce the Saturday statement at trial, the trial judge made no specific ruling as to its voluntariness. However, there was sufficient evidence presented for this Court to make that determination.
I
Jones initially contends that the Saturday statement was illegally obtained because he was not given the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Jones was arrested in his hometown of Brandon, Mississippi, on Friday, February 11, 1977. On Saturday, February 12th, three Birmingham police officers traveled by car to Brandon to pick up Jones. Before leaving Brandon to return to Birmingham, Jones stated “that he was going to make a statement, he wanted to tell [the officers] all about it, but he wanted to wait until after he got to Birmingham.”
The return trip to Birmingham took some ten to twelve hours due to the fact that several stops were made in an effort to locate Jones’ car which had been wrecked and sold to a shredder. Captain Carl Garrett, one of the Birmingham police officers, gave the following account of this trip:
“After we were in the car and we had ridden several miles and we had stopped to eat snacks and we were looking for his car, several times he started to go ahead and tell us the whole thing, but he would stop and ask me if I thought he should make a statement; did I think in my opinion should he make a statement. I told him that I couldn’t answer that for him. Then one time after we had stopped to get some crackers and cokes he said, ‘I’m going to go ahead and tell you everything that happened’, and he said, ‘What do [you] think about it? Do you think I should?’ So, I told him then if he is not guilty if he didn’t do it, then it couldn’t do anything but help him.”
Jones then gave the statement which he claims was illegally obtained.
It is true that none of the Birmingham police officers advised Jones of his constitutional rights at any time during the trip from Brandon to Birmingham. However, the record shows that, prior to leaving Brandon, Captain Garrett was given a printed waiver of rights form bearing what he was told was Jones’ signature. The waiver was given to Garrett by the arresting officer, Deputy Sheriff Ken Dickerson, and was witnessed by Dickerson and three other persons. The contents of this form were read into the record by Garrett:
“It’s a sheet of paper with the letter headed ‘Charles Clark, Sheriff, Rankin County, Brandon, Mississippi.’ Place is indicated ‘Rankin Sheriff’s Office. Date 2/11/77. Time 2255.’
“And says ‘Your Rights’ and under that it says ‘Before we ask you any questions —’ and Jerry Lee Jones’ name is written in — ‘You must understand your rights. You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer one will be appointed for you before any questioning, if you wish. If you decide to answer questions now without a lawyer present you will still have the right to stop answering at any time until you talk to a lawyer.’
“Then there’s a waiver and release under that. T have read this statement of my rights and I understand what my rights are. I’m willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I’m doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. I have been explained and fully understand the above rights and release.’ ”
*995 We are fully cognizant of the fact that this is hearsay evidence. There was, however, no objection on that ground at trial. “Hearsay evidence is not inherently inadmissible and must be challenged by a specific objection.” Carpenter v. State, 408 So.2d 559, 561 (Ala.Cr.App.1981), cert. denied, 408 So.2d 561 (Ala.1982).
Moreover, Garrett testified that Dickerson had told him that Jones, after his arrest, had conferred with two different attorneys on separate occasions.[1] Although Garrett was present at the courthouse when Jones talked with the second attorney, neither attorney approached Garrett or the other officers concerning Jones’ transfer to Birmingham. Compare Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), where law enforcement officers had agreed with the accused’s attorney not to question the accused during the trip. At no time during the trip from Brandon to Birmingham did Jones say that he wanted to talk to an attorney before making a statement or even ask about obtaining an attorney in Birmingham. These facts, added to the fact that, before leaving Brandon, Jones stated that he wanted to tell the officers “all about it”, lead us to conclude that Jones was adequately advised of his constitutional rights and that he voluntarily waived those rights.
II
• Jones also asserts that the Saturday statement was illegally obtained because it was the product of improper inducement.
The general rules concerning induced confessions and statements were set out by this Court in Eakes v. State, 387 So.2d 855, 858-59 (Ala.Cr.App.1978):
“A confession is presumed to be involuntary. Before its admission into evidence there must be evidence addressed to the trial judge sufficient to rebut that presumption and a showing that the confession was made without influence of either hope or of fear, unless the attending circumstances affirmatively disclose the voluntariness of the confession. Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973); Bush v. State, 282 Ala. 134, 209 So.2d 416 (1968). In order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Bell v. Alabama, 5 Cir., 367 F.2d .243, cert. denied, 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1966); Wallace, supra. The question of whether a confession was obtained by coercion or improper inducement can. be determined only by examination of all the attendant circumstances. Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Wallace, supra. Each case must stand or fall on its own merits for the constitutional inquiry into the issue of voluntariness requires more than a mere ‘color-matching of cases’. Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). The true test of determining whether extrajudicial confessions are voluntary is whether the defendant’s will was overborne at the time he confessed and therefore not the product of a rational intellect and a free will. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Elliott v. State, 338 So.2d 483 (Ala.Cr.App.1976).”
Garrett testified that the officers did not question Jones during the trip to Birmingham or suggest that he make a statement. “[Jones] just started talking and wanted to tell us all about it. Said he wasn’t guilty. Said he didn’t kill the girl Shehane.... [He] was denying that he killed the girl from the start .... He saw it happen, but he didn’t do it and that Thomas did.” Several times Jones started to tell the officers about the night Ms. Shehane was murdered, but would stop and ask for the officers’ advice. Garrett readily admitted that he eventually told Jones something to the effect “that if what he was telling me was *996 the truth, that he didn’t kill the girl, then whatever he told us about Thomas and how Thomas did it and what he did couldn’t do anything but to help him.”
It is well settled in this state that a mere adjuration to tell the truth or a statement that it would be better to tell the truth is not an inducement which will render a defendant’s statement or confession involuntary. Edwardson v. State, 255 Ala. 246, 251, 51 So.2d 233 (1951); Ellis v. State, 398 So.2d 402, 403 (Ala.Cr.App.1981); Eakes, supra, at 859. In Harvey v. State, 272 Ark. 19, 611 S.W.2d 762, 764 (1981), a police officer told the defendant that “it would probably help [him] if he went ahead and talked to them and told the truth.” The Arkansas Supreme Court held that “[t]his amounted to ‘merely an expression of opinion, and ... was not coupled with innuendo or subtleties calculated to deceive the prisoner.’ ” Id. Similarly, in State v. Urhahn, 621 S.W.2d 928, 932 (Mo.App. 1981), the Missouri Court of Appeals held that a police officer’s statement “that the only way [the defendant] could help [herself] to get out of trouble was to speak to him then” appeared to be “a mere expression of opinion” and therefore did not render the defendant’s statement involuntary.
We find that Garrett’s statement to Jones was, like the officers’ statements in Harvey and Urhahn, a mere expression of opinion and did not operate as an inducement. This view is strengthened by the fact that Jones had stated that he did not kill Ms. Shehane and repeatedly asked the officers if he should make a statement. In addition, as we noted in Part I, Jones stated before leaving Brandon that he wanted to tell the officers “all about it” once he reached Birmingham. He obviously intended to make a statement from the start. The only question was when.
Jones points out that when asked if anyone told “this defendant that it would be better or worse for him if he did or didn’t talk to you”, Garrett replied, “Not like that, no, sir.” He argues that this equivocal answer indicates that Garrett knew an inducement had been offered. Garrett’s answer is explained by his testimony from the supplemental record:
“Q. [Assistant District Attorney]: Did you or anybody else in the car there say anything to him to the effect that it would be better for him if he went ahead and told you about it?
“A. No, sir.
“Q. Did anybody tell him it would be worse on him if he didn’t talk about it? “A. No, sir. I did tell him that if what he was telling me was the truth, that he didn’t kill the girl, then whatever he told us about Thomas and how Thomas did it and what he did couldn’t do anything but to help him. But, no, I didn’t tell him if he was guilty that whatever he said would be better, would help him or go against him or either way.”
Garrett unequivocally stated that Jones was not threatened or forced to make the statement, nor was he offered “any reward or hopes of reward or inducement or favors or anything.”
Reviewing all of the attendant circumstances, we conclude that Jones’ first statement was not the produce of improper inducement. The State presented sufficient evidence to show that the statement was voluntarily given. Having found that there was no inducement which would render Jones’ Saturday statement involuntary, it follows that the Sunday statement was not tainted and therefore was properly admitted.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. No objection was made to this testimony on hearsay or any other ground.