[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 391 
Alan Dale Kolmetz was indicted for the offenses of murder, in violation of § 13A-6-2, Code of Alabama 1975, and assault in the first degree, in violation of § 13A-6-20, Code of Alabama 1975. On motion of the State, the two indictments were consolidated for trial. The jury found Kolmetz guilty of the lesser included offenses of manslaughter and assault in the second degree, and Kolmetz was sentenced to 16 years' imprisonment on the manslaughter conviction and to six years' imprisonment on the conviction for assault in the second degree. Seven issues are raised on appeal.
In this case, Kolmetz, driving a pickup truck, collided with another vehicle carrying three persons on the Boggy Creek Bridge in Houston County. The driver of the second vehicle was killed and another passenger in the car was injured.
 I
Kolmetz contends that the trial court erred in overruling his motion for new trial on the ground that three photographs introduced by the defense and admitted into evidence were inadvertently omitted from the group of photographs considered by the jury in its deliberation.
According to the record, the State introduced into evidence the following photographs: 1) a group of 52 photographs marked as State's exhibit number 1; 2) a group of 11 photographs marked as State's exhibit number 2; and 3) one photograph marked as State's exhibit number 1-A. These photographs were later admitted into evidence. Kolmetz then introduced into evidence a group of 94 photographs marked as defendant's exhibit number 1. These photographs were later admitted into evidence without objection.
Three of the photographs included within defendant's exhibit number 1, which depicted the bridge and the bridge railing of the southeast side of the roadway where the accident occurred, were never given to the jury because the three photographs were inadvertently placed in the prosecutor's file in the courtroom. The day after the trial, the prosecutor discovered the photographs in his file and immediately turned them over to defense counsel. Defense counsel then filed a motion for new trial due to the omission of the three photographs from the group of photographs considered by the jury in its deliberation.
At the motion hearing, defense counsel introduced the three omitted photographs into evidence, and the prosecutor introduced a group of 48 photographs that had been previously admitted into evidence at the trial. The trial court reviewed all of the photographs introduced at the motion hearing and found that the three photographs had been omitted by error and that their omission was immaterial in light of the numerous other photographs depicting substantially the same bridge railing and parts thereof that did go to the jury. We agree.
In order to warrant a reversal of a conviction, an appellant not only must show error, but also must demonstrate that such error resulted in a substantial injury. Chillous v. State,405 So.2d 58 (Ala.Cr.App. 1981); Rule 45, A.R.App.P. The exclusion of admissible evidence is not reversible error when it would have been merely cumulative *Page 392 
of other evidence that was admitted. Houston v. State,565 So.2d 277 (Ala.Cr.App. 1990).
In this case, the trial judge found that the omitted photographs were cumulative of numerous other photographs that were taken to the jury room during the jury's deliberations. We have reviewed the 158 photographs admitted into evidence at Kolmetz's trial and agree with the trial court that the three omitted photographs of the bridge railing were cumulative of at least 44 other photographs of the bridge railing that were taken into the jury room. Hence, any error in the omission of the three photographs from the jury room was harmless.
 II
Kolmetz contends that the trial court erred in admitting the testimony of Shane Sheffield, who testified concerning an out-of-court statement made by paramedic Billy Sewell in Kolmetz's presence.
Sheffield, who was one of three passengers in the vehicle struck by the truck driven by Kolmetz, testified that Kolmetz was placed in the same ambulance with him at the scene of the accident. Sheffield further testified that, while he and Kolmetz were in the ambulance en route to the hospital, Sheffield asked Billy Sewell, who was one of the emergency medical technicians in the ambulance, whether Kolmetz had been drinking. Defense counsel then objected to Sheffield's testifying as to Sewell's response because Sewell would be testifying later in the trial. The objection was overruled, and Sheffield testified that Sewell looked at him "real wide-eyed and said, 'Big time.' "
The State subsequently called Sewell as a witness and Sewell testified that, while he was in the ambulance with Kolmetz, he detected the strong odor of alcohol emanating from Kolmetz and that he could smell the strong odor of alcohol in the ambulance all the way to the hospital.
Kolmetz contends on appeal that Sheffield's testimony concerning the out-of-court statement of Sewell was hearsay and that the State failed to lay a predicate for the admission of Sewell's lay testimony as to whether Kolmetz was intoxicated.
Kolmetz is bound by specific objections at trial and cannot raise a new ground on appeal. Washington v. State,555 So.2d 347 (Ala.Cr.App. 1989). Because Kolmetz did not object to Sheffield's testimony at trial on the ground that the State failed to show that Sewell had the opportunity to form an opinion as to whether Kolmetz was intoxicated, this ground is not preserved for review on appeal.
Kolmetz did, on the other hand, timely object to Sheffield's testimony on the ground of hearsay. Sheffield's testimony of Sewell's out-of-court statement clearly constituted hearsay evidence, and the fact that Sewell allegedly made the statement in Kolmetz's presence and subsequently testified at the trial was irrelevant. Ex parte Snell, 565 So.2d 271 (Ala. 1990).
We find, however, that the trial court's admission of this hearsay testimony was merely harmless error because of the overwhelming evidence that Kolmetz was highly intoxicated at the time of the accident.
 "The admission of evidence apparently illegal may be rendered prejudicially innocuous by subsequent legal testimony to the same effect or from which the same facts can be inferred. Yelton v. State, 294 Ala. 340, 317 So.2d 331 (1974); 7 Alabama Digest, Criminal Law. Key No. 1169.-2(1).
 The ultimate fact to be inferred here is intoxication or drunkenness. Before the results of the PEI test were admitted there was a staggering and overwhelming amount of evidence that the appellant was drunk and highly intoxicated. It is not error to allow facts to be shown over objection when they have already been proved without objection. Bush v. State, 282 Ala. 134, 209 So.2d 416 (1968)."
Estes v. State, 358 So.2d 1050, 1054 (Ala.Crim.App. 1977),cert. denied, 358 So.2d 1057 (Ala. 1978). *Page 393 
In the present case, there was ample evidence from which Kolmetz's drunkenness could be inferred. Roger T. Nall, an emergency medical technician who treated Kolmetz at the scene of the accident, testified that he smelled the odor of alcohol in Kolmetz's pickup truck and on Kolmetz's person, that Kolmetz's speech was slurred, and that, in his opinion, Kolmetz was intoxicated.
James Majors, the father of one of the victims, testified that there was a strong odor of alcohol in Kolmetz's hospital room. Sheffield, the victim who was taken to the hospital in the same ambulance as Kolmetz, testified that, after Kolmetz was placed in the ambulance, there was a very strong odor of alcohol in the ambulance. Willie T. Monk, who lived 50 yards from the scene of the accident, testified that he arrived at the scene of the accident moments after the collision had occurred and that he discovered several empty beer cans and a jug of vodka in Kolmetz's pickup truck, and that the vehicle had a strong odor of alcohol.
Mildred Smith, the nurse who rode in the ambulance with Kolmetz, testified that Kolmetz had a strong odor of alcohol emanating from this person, that his speech was slurred, that he was combative, and that, in her opinion, he was intoxicated.
Billy Sewell, a police officer and emergency medical technician who rode in the ambulance with Kolmetz, testified that Kolmetz's breath smelled strongly of alcohol and that Kolmetz was combative while riding in the ambulance to the hospital.
Daniel Mercer, an ambulance attendant, testified that there was a strong odor of alcohol emanating from Kolmetz's person and from his pickup truck and that he saw a gallon jug of vodka that was almost empty and several beer cans on the floor of Kolmetz's pickup truck.
Ronald Smith, a security officer at the hospital to which Kolmetz was transported, testified that he detected a very strong odor of alcohol emanating from Kolmetz's person, that Kolmetz was belligerent, and that, in his opinion, Kolmetz was intoxicated. Bill Knight, an investigator with the Henry County Sheriff's Department, testified that Kolmetz had a strong odor of alcohol emanating from his person at the time of the accident and that, in his opinion, Kolmetz was intoxicated.
Linda Waller, a licensed practical nurse at the hospital to which Kolmetz was transported, testified that when she treated Kolmetz after the accident, he had a strong odor of alcohol on his breath, that he was abusive, and that, in her opinion, he was intoxicated.
Dr. James Bellone, the emergency room physician who treated Kolmetz, testified that Kolmetz was "grossly intoxicated" and that he was not acting "appropriately."
Kolmetz himself admitted at trial that at the time of the accident, there was an odor of alcohol on his breath because he had consumed two mixed drinks containing vodka at 8:45 p.m. and 10:00 p.m., respectively, on the night in question, and the collision occurred between 11:00 p.m. and midnight.
Because of the abundant evidence that Kolmetz was highly intoxicated, any error in the admission of the hearsay testimony was rendered harmless. Powell v. State, 515 So.2d 140
(Ala.Cr.App. 1986), (any error in admission of blood analysis harmless in light of abundant independent testimony of intoxication).
 III
Kolmetz contends that the evidence was insufficient to sustain his conviction of assault in the second degree because the State's evidence failed to establish that Michael Majors, a passenger in the car struck by Kolmetz, suffered a "serious physical injury." We disagree.
Assault in the second degree is defined in § 13A-6-21, Code of Alabama 1975, as follows:
 "(a) A person commits the crime of assault in the second degree if:
 "(1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person; or
 "(2) With intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or a dangerous instrument; or *Page 394 
 "(3) He recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or
 "(4) For a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical or mental impairment or injury to another person by administering to him, without his consent, a drug, substance or preparation capable of producing the intended harm."
The phrase "serious physical injury" is defined as follows in § 13A-1-2(9), Code of Alabama 1975:
 "(9) Serious Physical Injury. Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."
Applying these statutory provisions to the case at bar, the State clearly proved that Kolmetz recklessly caused physical injury that caused serious and protracted disfigurement to Majors by means of a dangerous instrument.
At trial, Dr. Charles A. Feagin, a plastic and reconstructive surgeon, testified that when Majors was admitted to the hospital after the accident, he had lacerations around his eyelids, mouth, upper lips, and forehead and that he had significant injuries around his face. Dr. Feagin performed surgery on Majors for over an hour, removing particles of glass from Majors's face. Dr. Feagin further testified that there was scarring from the lacerations and that the scarring would never completely heal. According to Dr. Feagin, Majors suffered permanent disfigurement as a result of the injuries he sustained in the accident
In Barton v. State, 494 So.2d 943 (Ala.Cr.App. 1986), this court upheld a conviction of assault in the second degree wherein the victim received numerous wounds requiring stitches and the wounds left scars. Likewise, in the case sub judice, Majors received numerous wounds that caused permanent scarring and, in the opinion of a medical expert, protracted disfigurement. Hence, the State clearly presented sufficient evidence to sustain Kolmetz's conviction of assault in the second degree.
 IV
Kolmetz contends that the trial court erred in allowing the prosecution to introduce testimony that police requested a blood sample from Kolmetz and that he refused. The State responds that the evidence was properly admitted because Kolmetz opened the door for its admission.
A party cannot, by his own conduct, invite error and then seek to profit thereby. McCray v. State, 548 So.2d 573
(Ala.Cr.App. 1988). A party will not be permitted to allege an error in the trial court proceeding that was invited by him or that was a natural consequence of his own actions. Leverett v.State, 462 So.2d 972 (Ala.Cr.App. 1984).
In the instant case, on at least one occasion prior to the admission of evidence of Kolmetz's refusal to submit a blood sample for testing, Kolmetz elicited testimony that opened the door to the State's later admission of the blood sample request. During cross-examination of Ronald Smith, the hospital security officer, defense counsel asked the following questions:
 "Q. When you 'restrain him,' what did y'all do; did y'all strap him down on the table and hold him down?
 "A. We strapped his arms down and put a sheet up under his arms and tied him down to keep him from getting up, and we strapped his arms down, like I said, to keep him from getting to the neck brace until he was examined.
 "Q. So, if this table was a stretcher he was on — the stretcher — he was on a stretcher, and you tied his arms down by his sides like that; is that correct?
"(Mr. Waddell indicates).
"A. Yes, sir.
 "Q. And then you — did you tie his legs down, strap his legs down across his body? *Page 395 
 "A. His legs, sir, I don't remember, because I was at the upper part of the body.
 "Q. There was another security guard down at the bottom?
 "A. Well, there was [sic] nurses, doctors, security guards, patient techs.
"Q. Everybody had him down?
"A. Yes, sir.
 "Q. And had a sheet pulled up on him, then you had a sheet tied where he couldn't come up or couldn't move?
"A. Yes, sir.
 "Q. While he was laying [sic] on that stretcher in that hospital, and both of his arms were exposed where a blood test could have been taken out of that; isn't that right?
"A. It could have been, sir.
 "Q. In other words, he was restrained on that table, and there would [not] have been anything at all to prevent a nurse or a doctor with authority from coming over there and simply saying, 'We're going to draw some blood from you,' and stick it in that arm?
 "A. My understanding is, sir, they have to have permission to draw blood.
 "Q. That is correct, and if they had permission, or had an order, or had authority — when I asked the question, I said 'someone with authority' — there was nothing physically to stop or prevent blood from being drawn from this man while he was in the emergency room, is there?
"(Mr. Waddell indicates defendant).
"A. No, sir."
Later the State sought to establish that a blood alcohol test was attempted but that Kolmetz refused the test. Defense counsel objected to the question, and the court heard arguments outside the jury's presence. Defense counsel contended that because Kolmetz had not been placed under arrest and given hisMiranda rights when the blood test request was made, all evidence relating to the test was inadmissible. The prosecution responded that defense counsel's repeated questions to witnesses in an attempt to show that no one had tried to take a blood sample from Kolmetz effectively opened the door to the prosecution's subsequent question about the blood sample request. The trial court agreed with the prosecution and overruled Kolmetz's objection.
It is clear that defense counsel's questions to Smith implied that no effort was made to draw any blood from Kolmetz after the accident. Hence, defense counsel effectively opened the door to allow the State to elicit testimony as to whether anyone requested a blood sample from Kolmetz after the accident, despite the lack of a formal predicate. The trial court, therefore, properly overruled Kolmetz's objection to this testimony.
 V
Kolmetz contends that the trial court abused its discretion in limiting closing arguments to 30 minutes per side.
The trial court is allowed much discretion with respect to limiting arguments of counsel, and in the absence of some abuse of that discretion, no error exists. Smith v. State,364 So.2d 1 (Ala.Cr.App. 1978).
In the case sub judice, although the offenses charged were of a serious nature, the State does not agree that the issues were complex or that the length of the trial dictated that the attorneys should have been allowed a longer closing argument. The State, moreover, had the burden of proving the charges and appeared to be perfectly satisfied with the court's time limitation. Most importantly, Kolmetz does not state how he wasprejudiced by the time constraints, and he has, therefore, failed to meet his burden of establishing an abuse of the trial court's discretion in limiting closing arguments.
 VI
Kolmetz contends that the trial court improperly considered four prior alcohol-related charges resulting in no convictions in arriving at its sentences for manslaughter and assault in the second degree. *Page 396 
Kolmetz was convicted of 1) manslaughter, which is a Class B felony under § 13A-6-3, Code of Alabama 1975 and 2) assault in the second degree, which is a Class C felony under § 13A-6-21, Code of Alabama 1975. Under § 13A-5-6(a)(2) and (3), Code of Alabama 1975, respectively, a Class B felony is punishable by imprisonment for a term of not more than 20 years or less than two years, and a Class C felony is punishable by imprisonment for a term of not more than 10 years or less than one year and one day.
In the instant case, the record reveals that Kolmetz was sentenced to 16 years on the manslaughter conviction and to six years on the conviction for assault in the second degree. Because both sentences are within the range of punishment prescribed for each offense, the sentences will not be overturned on appeal absent a clear abuse of discretion.Fordham v. State, 513 So.2d 31 (Ala.Cr.App. 1986). The inclusion in a presentence report of charges that did not result in convictions is, moreover, not improper. Thompson v.State, 503 So.2d 871 (Ala.Cr.App. 1986), aff'd, 503 So.2d 887
(Ala. 1987), cert. denied, 484 U.S. 872, 108 S.Ct. 204,98 L.Ed.2d 155 (1987). In light of the overwhelming evidence of Kolmetz's guilt, we cannot say that the trial court abused its discretion in imposing the sentences that are within the range of punishment authorized by statute, and we will not substitute our judgment for that of the trial court as to the punishment Kolmetz should receive.
 VII
Kolmetz's final issue — that the prosecutor's suggested retrial of Kolmetz on the original charges of murder and assault in the first degree would violate the principle of double jeopardy — is not properly preserved for appeal. This court may review only rulings of the trial court that are adverse to the appellant. Lacy v. State, 484 So.2d 1192
(Ala.Cr.App. 1986).
Although the prosecutor suggested at the hearing on motion for new trial that Kolmetz be retried on the initial charges, no action was taken in this respect by the trial court. Hence, because no ruling adverse to Kolmetz was made, there is nothing for this court to review.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.