542 So.2d 307 (1988)
William Ray MINSHEW
v.
STATE.
1 Div. 712.
Court of Criminal Appeals of Alabama.
November 23, 1988.
Rehearing Denied January 27, 1989.
Certiorari Denied April 21, 1989.
*308 David L. Ratcliffe, Mobile, for appellant.
*309 Don Siegelman, Atty. Gen., and Beth Jackson Hughes, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 88-563.
BOWEN, Judge.
William Ray Minshew was convicted of first degree burglary and was sentenced to 20 years' imprisonment. He raises six issues on this appeal from that conviction.

I
First, he claims that the trial court erroneously granted the State's challenge for cause of prospective juror Zadie Arnold. We agree.
Voir dire questioning revealed that Ms. Arnold's brother had been prosecuted for robbery by the Mobile district attorney, had been convicted, and was currently in jail. With no further showing or information, the trial judge granted the prosecutor's challenge for cause. This constituted error.
Ms. Arnold was neither asked about nor expressed any personal feelings about Minshew, the district attorney's office, or her brother. For all we know, she could have been the victim of the robbery her brother committed, or she could have disliked her brother for any number of reasons and harbored no animosity or resentment against the district attorney's office for prosecuting him. The fact that a venire member's brother was convicted of a crime by the prosecutor does not, in and of itself, constitute either a statutory or a common-law challenge for cause. Code of Alabama 1975, § 12-16-150. See Ex parte Nettles, 435 So.2d 151, 152-53 (Ala.1983) (employment of venire member by victim does not give rise to implied bias as a matter of law and does not constitute automatic disqualification); Poellnitz v. State, 48 Ala.App. 196, 199-200, 263 So.2d 181 (1972) (robbery victim is not necessarily disqualified as a juror in a burglary trial).
"The test to be applied is probable prejudice. Probable prejudice for any reason disqualifies a prospective juror. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and the answers given by the prospective juror to see if this discretion was properly exercised." Alabama Power Co. v. Henderson, 342 So. 2d 323, 327 (Ala.1977).
"To justify a challenge of a juror for cause there must be a statutory ground ..., or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court." Nettles v. State, 435 So.2d 146, 149 (Ala.Cr.App.), affirmed, Ex parte Nettles, 435 So.2d 151 (Ala.1983).
Even "[p]roof that the juror has a biased or fixed opinion is insufficient. There must be proof that the opinion was `so fixed that it would bias the verdict of the juror.'" Clark v. State, 443 So.2d 1287, 1288 (Ala. Cr.App.1983). "[I]f the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court," he is not subject to challenge for cause, Mahan v. State, 508 So.2d 1180, 1182 (Ala.Cr.App.1986); Sparks v. State, 450 So.2d 188, 191 (Ala.Cr.App.1984). Here, there was no proof of any bias on the part of Ms. Arnold as a result of her brother's prosecution, much less an absolute bias which would have prevented her from rendering a fair and impartial verdict. Further questioning of Ms. Arnold was required before the trial court could determine, first, whether her brother's prosecution caused her to harbor a prejudice against the State and, second, assuming such a prejudice existed, whether she could lay it aside, follow the court's instructions, and render an impartial verdict. See, e.g., Stringfellow v. State, 485 So.2d 1238, 1242 (Ala.Cr.App.1986) (wherein defense counsel was given the opportunity to question the venireperson to determine whether prejudice existed); Clark v. State, supra (wherein the court questioned the prospective juror to determine whether stated prejudice could be laid aside); Johnson v. State, 356 So.2d 769, 772 (Ala.Cr.App.1978) (wherein venireman's answer, on follow-up questioning by the court, that although he was "a little biased" because he had been the victim of a recent robbery, he could listen to the evidence and render an impartial decision *310 in robbery case, removed ground for challenge for cause).

II
Minshew argues that his motion in limine to prevent the State from introducing evidence of two subsequent offenses should have been granted. We hold that the trial court properly denied the motion and allowed the State to offer evidence of the collateral offenses for the purpose of showing the defendant's intent. However, the State's proof regarding the defendant's apprehension for those offenses was too far-ranging and, on retrial, should be limited to the facts constituting the crimes themselves.
The defendant was tried for entering or remaining unlawfully in the residence of his estranged wife's parents, Mr. and Mrs. Henderson, with the intent to harass, menace, or assault Mrs. Henderson on June 2, 1986. The State's evidence established that he forced his way into his mother-in-law's home, pushed Mrs. Henderson against a wall, pulled a knife from his pocket and cut her telephone cord as she tried to dial for the police, and then held the knife to her mouth when she tried to run away. According to the State's witnesses, Mrs. Henderson sustained a small puncture wound on her lip as a result of her encounter with the defendant.
The defendant testified that his mother-in-law allowed him to enter the residence but became angry when he told her why he wanted to talk with her daughter, from whom he was separated. According to the defendant, Mrs. Henderson slapped and clawed him and cut her lip during the process. He admitted cutting the telephone cord, but claimed that he did so in response to his mother-in-law's threat to call her husband. He denied holding a knife to Mrs. Henderson's mouth, cutting her lip, or having the intent to harm or frighten her, contending that he meant only to settle the domestic difficulties between his wife, her family, and himself.
Burglary is a specific intent crime. Ala. Code 1975, §§ 13A-7-5 through 13A-7-7 (Commentary). It is committed by one who "knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein." Ala.Code 1975 § 13A-7-5(a) (emphasis added). "If an accused is charged with a crime that requires a prerequisite intent... then prior or subsequent criminal acts are admissible to establish that he had the necessary intent when he committed the instant crime." Jones v. State, 439 So.2d 1308, 1310 (Ala. Cr.App.1983), and authorities cited therein.
Given the conflict in the evidence in this case, the defendant's intent was at issue. Brewer v. State, 440 So.2d 1155, 1158 (Ala. Cr.App.1983), is inapplicable here for two reasons. First, unlike the brutal murder in Brewer, the commission of which established intent, the nature of Mrs. Henderson's injury did not foreclose the possibilities of accident, self-infliction, or self-defense by the defendant. Second, unlike the accused in Brewer, whose defense was alibi, the defendant here admitted much of the conduct at issue but claimed lack of criminal intent.
The two collateral offenses proved by the State related to occurrences in October 1986 and October 1987. In October 1986, the defendant entered the Henderson home, took his estranged wife hostage, and held her for several hours until she jumped from a second story window. He was convicted of criminal trespass. In October 1987, just a week prior to trial on the instant indictment, the defendant was arrested after he was discovered one night armed with a derringer outside the Hendersons' house, where his estranged wife was residing after having threatened her life.
Both collateral offenses involved the defendant's estranged wife or her family and were marked by force or the potential for violence on the defendant's part. They were, therefore, admissible to shed light on the defendant's intent during the June 2 encounter with Mrs. Henderson and to rebut his claims that he was allowed to enter the Henderson residence and that he intended only to resolve a domestic dispute but not to commit a crime on June 2, 1986. See Stanley v. State, 57 Ala.App. 83, 84, *311 326 So.2d 148, 149 (1976) (accused's confession to two other burglaries against same tenant admitted to show his entry was not by invitation and his intent was to steal).
Although the facts constituting the defendant's subsequent offenses were material to prove his intent for the instant prosecution, evidence of the means of apprehending the defendant for those offenses had no bearing on any triable issue, was unduly inflammatory, and should be omitted on retrial. We find, for instance, that the testimony concerning the police emergency response team, "hostage negotiations," the "assault plan on the residence," evacuating the neighborhood, perimeters, and sharpshooters, regarding the incident for which the defendant was convicted of criminal trespass, should not have been admitted because it is immaterial, without probative value, and highly prejudicial.

III
The defendant argues that the following sentence contained in the court's supplemental oral charge foreclosed a finding of fact in his favor by the jury: "[I]n this case the defendant was charged with using a knife and you've got to believe that the knife was a deadly weapon or a dangerous instrument."
"`[T]he portion of the charge here excepted to should be construed in connection with the whole charge of the court.' Ex parte Cowart, 201 Ala. 525, 78 So. 879 (1918).... `While a particular remark by the trial judge may be open to question, in order for it to amount to the grossly improper error requiring reversal, it must have influenced the result of the case.' Lokos v. State, 434 So.2d 818, 823 (Ala.Cr. App.1982), affirmed, Ex parte Lokos, 434 So.2d 831 (Ala.1983)." Gamble v. State, 480 So.2d 38, 40-41 (Ala.Cr.App.1985). "An instruction explanatory of another charge should be considered in connection therewith; and if, when considered together, they assert a correct proposition, the judgment will not be reversed, though the explanatory charge, as a separate and disconnected instruction, may not express all the elements of the proposition." Johnson v. State, 81 Ala. 54, 1 So. 573, 573-74 (1886).
Taken in the context of the entire charge, this particular remark did not instruct the jury that the knife used by the defendant was a deadly weapon or a dangerous instrument; it instructed the jury that they must so find in order to convict the defendant of the charged offense.

IV
Defendant objected to the testimony of Officer James E. Mayo, on the ground that it constituted hearsay. The testimony was not hearsay because it recounted action taken in response to information received, see Cory v. State, 372 So.2d 394, 399 (Ala.Cr.App.1979); Crews v. State, 375 So.2d 1291, 1294 (Ala.Cr.App.1979), and was therefore not offered to prove the truth of its contents. The testimony was, however, objectionable on the basis of the principles outlined in part I of this opinion, and we caution the State, on retrial, to limit its proof of the collateral offenses to the facts constituting the crimes themselves and not to venture into the details of the defendant's apprehension for those offenses.

V
The defendant argues that the State did not prove that he "knowingly and unlawfully enter[ed]" the Henderson residence because, as the victim's son-in-law, he reasonably believed that he was licensed or privileged to enter her home. Mrs. Henderson, however, testified that he did not have permission to enter.
Furthermore, even if his initial entry had been licensed or privileged, it is clear that the license or privilege to remain on Mrs. Henderson's premises was terminated when the defendant held a knife to her mouth. See generally, Johnson v. State, 473 So.2d 607, 609-11 (Ala.Cr.App.1985). Even the defendant's version of the facts included a scuffle with Mrs. Henderson and his cutting her telephone cord, both of which would give him "reason to know that *312 [Mrs. Henderson was] no longer willing that [he] ... remain." Johnson v. State, 473 So.2d at 609 (quoting 1 Restatement (Second) of Torts § 168 at 315 (1965)).
Under the circumstances, a jury question was presented and the court correctly denied the motion for judgment of acquittal.

VI
The defendant argues that the indictment was defective for two reasons: (1) that it did not allege the intent to commit a felony; and (2) that it did not sufficiently inform him of the crime he intended to commit.
The grand jury charged that defendant
"did knowingly and unlawfully enter or remain unlawfully in the dwelling of Mildred Henderson, with the intent to commit a crime or crimes therein, to wit: menacing and/or harassment and/or assault, and while effecting entry or while in the dwelling or in immediate flight therefrom, the said WILLIAM RAY MINSHEW was armed with a deadly weapon, to wit: a knife, in violation of 13A-7-5 of the Code of Alabama."
Section 13A-7-5 provides, in pertinent part, the following:
"(A) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
"(1) Is armed with explosives or a deadly weapon.... [emphasis added]."
The statute requires the intent to commit "a crime." A crime is "[a] misdemeanor or a felony." Ala.Code 1975 § 13A-1-2(5). While we recognize that the Commentary to §§ 13A-7-5 through 13A-7-7 states that "an intent to commit theft or felony [is] required for 1st or 2nd degree [burglary]," the official comments, though instructive in resolving ambiguity in a statute, cf. Donovan v. State, 359 So.2d 1181, 1183 (Ala.Cr. App.1978), or in construing doubtful terms, are not part of the section and have not been enacted by the legislature. Cf. Simmons v. Clemco Industries, 368 So.2d 509, 514 (Ala.1979) (official comments to Uniform Commercial Code are not part of legislative enactment).
Here, the term "crime" is not ambiguous. Where statutory words conflict with the Commentary, of course, the statutory words control. "[T]he prevailing view in the modern codes is that an intent to commit any offense" suffices for first degree burglary. W. LaFave & A. Scott, 2 Substantive Criminal Law § 8.13(e) at 474 (1986). "This is a sound position, as `an intrusion for any criminal purpose creates elements of alarm and danger to persons who may be present in a place where they should be entitled to freedom from intrusion.' " Id., (quoting Model Penal Code § 221.1, Comment, at 75 (1980)).
The defendant also contends that the averment "with the intent to commit a crime or crimes therein, to-wit: menacing and/or harassment and/or assault" was so uncertain that it deprived him of adequate notice and the ability to prepare his defense.
At common law, disjunctive pleading was bad and rendered the indictment defective. See, generally, Horton v. State, 53 Ala. 488, 489-90 (1875) The theory was that disjunctive allegations, those joined by the word "or," made the averment uncertain as to which of two or more things was meant, and was thus violative of the constitutional provision which entitles the accused to be informed of the nature and cause of the accusation against him. Id. Therefore, at common law, if the State expected that its proof might constitute more than one offense or if it was uncertain about which means of committing the same offense its evidence might establish, then the proper way to meet these possible variations in the proof was to charge each possibility in a separate count of the indictment. Id.
The requirement of a separate count conforming to each possibility the proof might raise was changedin three instances at leastby statute in Alabama as early as *313 1852. Those statutes, now codified at §§ 15-8-50 through 15-8-52, provide:
§ 15-8-50: "When an offense may be committed by different means or with different intents, such means or intents may be alleged in an indictment in the same count in the alternative."
§ 15-8-51: "When an act is criminal, if producing different results, such results may be charged in an indictment in the same count in the alternative."
§ 15-8-52: "When offenses are of the same character and subject to the same punishment, the defendant may be charged in an indictment with the commission of either in the same count in the alternative."
The "apparent purpose of these several provisions [was] to obviate the necessity of a multiplicity of counts, permitting one count to serve the purposes accomplished by several at common law.... [At common law] the intent in burglary must have been averredthat is, the specific felony it was intended to commit, whether to steal, murder, or ravish. These could be averred in separate counts, but not disjunctively in the same count. The statutory provision would ... authorize the alternative averment... in an indictment for burglary, of the intent, in the alternative, to commit several felonies...." Horton v. State, 53 Ala. at 492 (emphasis added). Section 15-8-50, therefore, would permit the disjunctive averment that defendant entered the residence with the intent to commit the crimes of menacing or harassment or assault.
The conjunctive averment, i.e., that defendant had the intent to commit the crimes of menacing and harassment and assault, was also permissible. "An indictment for burglary may lay the offense with several intents, as with intent to steal and intent to murder ... as by alleging the several intents conjunctively in the same court." 12A C.J.S. Burglary § 53 at 257 (1980). An indictment alleging entry with the intent to steal and with the intent to murder is not duplicitous, and the State need prove only one of the averments for a conviction. State v. Boyd, 287 N.C. 131, 214 S.E.2d 14 (1975).
Although the use of either the disjunctive or the conjunctive averment alone is appropriate, the use of both together has been condemned as a "grammatical monstrosity." Boggs v. Commonwealth, 285 Ky. 558, 561, 148 S.W.2d 703, 704 (1941). "While there has been widespread contempt for the use of the disjunctive phrase `and/or' in statutes, regulations, and pleadings, `the better rule is that the use of the disjunctive is fatal only where uncertainty results.'" State v. Getty Oil Co., 305 A.2d 327, 332 (Del.Super.1973). See also Davis v. State, 476 N.E.2d 127, 132 (Ind.App. 1985) ("the charge of endangerment `and/or' abandonment ... effectively charged [the defendants] with both acts; the use of `or' was superfluous"); Plunkett v. State, 719 P.2d 834, 841 (Okla.Cr. App.1986), cert. denied, Plunkett v. Oklahoma, 479 U.S. 1019, 107 S.Ct. 675, 93 L.Ed.2d 725 (1986) (no error in use of "and/or" in light of statute which provided that "where the offense may be committed by the use of different means, the means may be alleged in the alternative in the same court"); State v. Pratt, 255 La. 919, 233 So.2d 883 (1970) ("and/or" averment did not hamper defendant's ability to understand the nature of the charge or to prepare a defense.) See also Harris v. City of Vestavia Hills, 49 Ala.App. 171, 173, 269 So.2d 626 (1972).
Thus, while the use of "and/or" should be avoided where it results in uncertainty or confusion, here it did not result in uncertainty. The defendant was put on notice that he would be required to defend against the charge of entering or remaining in the Henderson residence with intent to commit all three crimes: menacing, harassment and assault. Those three offenses belong to the same family of crimes and are similar enough in their elements that requiring the accused to defend against all of them did not result in a denial of due process.
For the reason stated in Issue I of this opinion, the judgment of the circuit court is *314 reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
TAYLOR, P.J., and PATTERSON and McMILLAN, JJ., concur.
TYSON, J., dissents with opinion.
TYSON, Judge, dissenting.
The following was originally prepared as a majority opinion in this case and now becomes my dissent. I vote to affirm the cause.
William Ray Minshew was charged with burglary in the first degree, in violation of § 13A-7-5, Code of Alabama (1975). The jury found the defendant "guilty as charged in the indictment." A sentencing hearing was held and the trial judge sentenced this defendant to twenty years' imprisonment in the penitentiary.
The appellant, William Ray Minshew, met Karen Childress in September of 1985 and they married on March 26, 1986. Two months later, Karen left the appellant and returned to the home of her parents on 2423 West Road in Mobile, Alabama. At that time, a restraining order was placed on the appellant to prevent him from seeing Karen.
On June 2, 1986, around 10:00 p.m., Karen drove her automobile into her parents' driveway. As she was getting out of the car, she heard someone coming from the storage shed in back of the house. She jumped back into the car and locked the door. The appellant walked up to the car and started pounding on it and kicking it. Ms. Childress blew the horn and left her parents' home. Earlier, Karen heard the appellant say he would kill her mother.
Karen's mother, Mrs. Mildred Henderson, testified that, on the night in question, she heard a loud noise coming from outside. She looked outside to see what was happening. She saw the appellant kicking on Karen's car door and pounding on the car. Mrs. Henderson testified that, at this point, she picked up the phone to call the police. Before she finished dialing, she looked back out and did not see her daughter. When she cracked open the door to see what had happened, the appellant pushed the door open and forced his way inside the house. The appellant held her against the wall and threw the phone on the floor. He pulled a knife from his pants and cut the phone cord. Mrs. Henderson testified that, when she saw the knife, she was in imminent fear of serious physical injury. Mrs. Henderson tried to escape through the back door but the appellant would not allow her to leave. He grabbed her and put his arm around her while holding the knife to her mouth. When the appellant turned Mrs. Henderson loose, he told her he had to get out before the police arrived. The appellant told Mrs. Henderson that he knew her daughter had gone to call the police. The appellant told Mrs. Henderson to get her car keys. At this point, Mrs. Henderson ran out of the door and to a neighbor's house. She testified that she pounded on the door repeatedly until the neighbor, Mary Ann Willard, answered. Mrs. Henderson was hysterical at this point. Willard testified that it took fifteen minutes to calm down Mrs. Henderson.
Willard also testified that Mrs. Henderson had a small puncture wound on her lip. Willard testified that they called Mrs. Henderson's husband and then went across the street to the Hendersons' house to wait for the police.
Emelda Brown, a police officer with the City of Mobile, testified that she responded to a call on June 2, 1986, to go to 2423 West Road. When she arrived, Mrs. Henderson was very distraught. It took Officer Brown and her backup approximately ten minutes to calm down Mrs. Henderson. Officer Brown testified that Mrs. Henderson had a slight laceration on her lip. After Mrs. Henderson gave the police her statement, they went inside the Hendersons' house. Once inside, the police found a telephone line that had been cut and a lamp that had been knocked over. To further calm Mrs. Henderson, the police searched the area around the house. While searching around the house, the police found a black bag which had appellant's name on it. Officer Brown also testified *315 that they examined Karen's car and found a large footprint on the door of the driver's side of the car.
The appellant testified that on June 2, 1986, he went to the Hendersons' home to talk with Karen. He testified that Karen must have jumped into her car because he startled her. Appellant said that he only wanted to talk to Karen. He hit the window of her car and told her to open the door. Appellant denied kicking the car. Appellant testified that, at this point, Mrs. Henderson walked out onto the porch. He stated that Mrs. Henderson waited for him and asked him what he was doing there. The appellant told her that he came to see Karen and told her that her daughter had a cocaine and alcohol problem and was hanging around with a lesbian. The appellant said that Mrs. Henderson became angry and slapped and clawed him and cut her lip in the process. The appellant testified that he went inside with Mrs. Henderson. Then the appellant cut the phone cord with a pocket knife, which he had on a key chain in his pants. He cut the phone because Mrs. Henderson threatened to call her husband. He said he wanted to wait until Karen came home. The appellant testified that he did not intend to scare Mrs. Henderson when he cut the phone cord. He said he just wanted to get the whole mess straightened out. He denied holding the knife up to her lip. The appellant testified that he and Karen had been together in July, August, and September without her parents' knowledge.

I
During the voir dire examination of the jury, one prospective juror, Zadie Arnold, stated that her brother had been convicted of robbery and was currently serving time in jail. She thought he had been prosecuted by the district attorney's office in Mobile, Alabama. The trial court allowed the State to strike Juror Arnold for cause. The appellant asserts that the trial court abused its discretion by allowing this juror to be struck without inquiring into whether this juror could lay aside her impression and render a verdict based on the evidence. To determine whether vel non the trial judge erred by granting this challenge for cause, we must examine the voir dire examination of Juror Arnold.
"MS. MURPHREE: [H]as anybody ever been charged with a crime? Or has anybody in your immediate family or your circle of close personal friends ever been charged with a crime?
"Yes, ma'am. What's your panel number and name?
"JUROR: Zadie Arnold, panel two.
"MS. MURPHREE: Who was the person involved?
"JUROR ARNOLD: A relative.
"MS. MURPHREE: A member of the immediate family?
"JUROR ARNOLD: (Witness nodding.)
"MS. MURPHREE: What crime was alleged?
"JUROR ARNOLD: Robbery.
"MS. MURPHREE: And what was the final outcome of the matter?
"JUROR ARNOLD: Went to prison.
"....
"MS. MURPHREE: Your Honor, there is one other that I would like to challenge for cause and that is number twelve, Zadie Arnold whose son was triedby this office? Was it here in Mobile?
"JUROR ARNOLD: I don't have a son.
"MS. MURPHREE: I'm sorry. Not son. I interjected that. An immediate member of the family was tried?
"JUROR ARNOLD: It was my brother.
"MS. MURPHREE: Her brother. Was it by this office in Mobile?
"JUROR ARNOLD: I think so. It was in Mobile. He's in jail now.
"MS. MURPHREE: Her brother was convicted by the District Attorney's office in Mobile." (R. 4-10)
Section 12-16-150, Code of Alabama 1975, sets out the grounds for disqualification of jury veniremen for cause. One of these grounds is that the juror has a "[F]ixed opinion as to the guilt or innocence of the defendant that would bias his verdict." § 12-16-150(7), Code of Alabama 1975.
*316 Appellant contends that, without further inquiry, the court was unable to tell whether prospective Juror Arnold's brother's conviction would have prejudiced her decision.
The appellant, quoting Clark v. State, 443 So.2d 1287, 1288 (Ala.Cr.App.1983), argues that, "[p]roof that a juror has a biased or fixed opinion is insufficient. There must be proof that his opinion was so fixed that it would bias the verdict of the juror."
Although I agree that there must be more than mere prejudice or bias, the trial judge did not commit reversible error in refusing to further question prospective Juror Arnold.
The State asked the entire venire whether anyone in their immediate family had ever been convicted of a crime. In response to this question, Juror Arnold said that her brother has been convicted of robbery and was now serving time in jail. Upon further questioning, Juror Arnold stated that she believed her brother had been prosecuted by the district attorney's office in Mobile. I find that the court had sufficient information before it to conclude that prospective juror Arnold was biased to the point it would affect her verdict.
Because the district attorney's office had convicted juror Arnold's brother of robbery, the trial judge could certainly have inferred that Juror Arnold was unable to render a fair and impartial verdict based on the evidence adduced at trial. There was no need to question Juror Arnold further. "Where the court has already elicited information from a prospective juror that is sufficient to uncover prejudice or bias, the Court should not be placed in error for refusing to allow a party the opportunity to continue questioning the juror about the same matter." Stringfellow v. State, 485 So.2d 1238, 1242 (Ala.Cr.App.1986).
Furthermore, the trial court's ruling is entitled to great weight and should not be disturbed on appeal unless clearly shown to be an abuse of discretion. Ex parte Nettles, 435 So.2d 151 (Ala.1983). See also Watwood v. State, 389 So.2d 549 (Ala.Cr. App.), cert. denied, 389 So.2d 552 (Ala. 1980); Motes v. State, 356 So.2d 712 (Ala. Cr.App.), cert. denied, 356 So.2d 720 (Ala. 1978). I do not believe the trial judge abused his discretion in this instance.

II
The appellant contends that the trial court erred when it denied his motion in limine and allowed the State to introduce evidence of other subsequent crimes committed by the appellant. The trial court allowed testimony of two subsequent incidents involving this appellant, Karen and her parents, Mr. and Mrs. Henderson.
The first of these incidents occurred in October of 1986. During this incident the appellant entered the Hendersons' home and took Karen hostage. He held her hostage for several hours. The situation ended when Karen jumped from a second story window, followed by the appellant. He was immediately taken into police custody and placed under arrest.
The second incident involving the appellant and the Hendersons occurred in the week prior to the trial in this case. Officer James Mayo, Sr., of the Mobile Police Department, testified that he received a telephone call from Karen Childress. She reported that she had received threats on her life from the appellant. As a result of this conversation, the police began searching for the appellant. The appellant was located on the Thursday before the trial began. The police received information that the appellant was seen in the area around the Hendersons' new home that morning. The police formulated a plan to capture the appellant that night by using Mr. Henderson.
Around 8:30 p.m., Mr. Henderson arrived home and the appellant came out of the shadows of the house armed with a stacked barrel derringer. The appellant was immediately taken into custody and arrested.
The appellant alleges that the trial court incorrectly relied on the motive exception when it denied his motion in limine and allowed testimony concerning these offenses. He argues that the court's reliance on this exception was wrong because the subsequent criminal acts involved other members of the victim's family and did not *317 show that he intended to commit this burglary. The appellant also contends that testimony concerning the subsequent acts was incorrectly admitted to prove intent when his intent was not in issue.
The general rule is that, "evidence of other acts which themselves constitute distinct and independent offenses are not admissible, if its only purpose is to show bad character, inclination, or propensity of an accused to commit the type of crime charged or to act in confirmance with such bad character, inclination or propensity." Pack v. State, 461 So.2d 910, 913 (Ala.Cr. App.1984). See also Twilley v. State, 472 So.2d 1130 (Ala.Cr.App.1985); C. Gamble, McElroy's Alabama Evidence § 69.01.
However, "if the collateral misconduct is relevant and tends to show the commission of the current offense other than by suggesting he is more likely to be guilty" because of other misdeeds, then this evidence is admissible. Barton v. State, 494 So.2d 943, 952 (Ala.Cr.App.1986), citing C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977). See also Twilley; Popwell v. State, 480 So.2d 41 (Ala.Cr.App. 1985).
The appellant argues that, because these offenses do not involve the victim but rather members of her immediate family, they are irrelevant to show motive in this case. I disagree. It is precisely because these other crimes involve members of the victim's immediate family that they are germane to show motive. The status of appellant's relationship with the victim and her family and his subsequent attempts to intimidate the victim's family are all relevant to prove the motive in the crime for which he is now charged. The general rule which forbids proof of former difficulties between the accused and the victim does not apply to the subsequent difficulties between the two. C. Gamble, McElroy's Alabama Evidence § 45.09 (3d ed. 1977).
The evidence of these subsequent crimes is also admissible for the purpose of showing intent. The appellant was charged with violating § 13A-7-5, Code of Alabama 1975. Section 13A-7-5(a)(1) provides:
"A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with the intent to commit a crime therein, and if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime: Is armed with explosives or a deadly weapons."
It is clear that burglary requires a specific mental intent. Appellant contends that the requisite intent under § 13A-7-5(a)(1), Code of Alabama 1975, can be inferred from the act itself. Where intent can be inferred from the act itself, evidence of other crimes is not admissible to show intent. Brewer v. State, 440 So.2d 1155, 1158 (Ala.Cr.App.1983).
While this may be true, the appellant put his intent at issue. The appellant testified that Karen's mother waited for him on the porch after Karen left. He also testified that he did not force his way into the home but rather walked in after Mrs. Henderson. The appellant testified that he cut the telephone cord with a knife because he wanted to wait for Karen to come home. He also testified that he did not threaten Mrs. Henderson and that the cut on her lip resulted when she attacked him. From this testimony, it is clear that appellant's intent was at issue.
When intent is an issue, then subsequent acts are admissible to show that appellant had the necessary intent when he committed the instant crime. Jones v. State, 439 So.2d 1308, 1310 (Ala.Cr.App.1983). See also Popwell, supra.
The trial judge is given very wide latitude in deciding whether to admit evidence of collateral offenses. "[I]f such evidence goes further than showing character and bears probatively on the intent with which the act was committed, it is none the less admissible though it might tend to discredit the defendant's character." McKenzie v. State, 250 Ala. 178, 33 So.2d 488 (1947).
Thus, I conclude that the trial court correctly denied appellant's motion in limine and properly allowed the testimony concerning the subsequent acts committed by this appellant into evidence.

*318 III
The appellant contends that the trial court improperly instructed the jury on a material element of burglary in the first degree by telling them that the knife used by the appellant was a deadly weapon. The appellant argues that this took away a material question of fact to be decided by the jury. The appellant refers to the following in the court's charge:
"A person commits the crime of assault in the second degree if with intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or a dangerous instrument. And in this case the defendant was charged with using a knife and you've got to believe that the knife was a deadly weapon or a dangerous instrument." (R. 149)
It is well settled that the jury charge must be examined as a whole. Brooks v. State, 353 So.2d 1 (Ala.Cr.App.1977). See also Crumpton v. State, 402 So.2d 1081 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala.1981).
If the law is correctly stated when considered as a whole, "then a disconnected part or sentence does not result in reversible error." Kelley v. State, 409 So.2d 909, 915 (Ala.Cr.App.1981). The trial court charged the jury on burglary in the first degree as follows:
"Then the State is required to prove that here in Mobile County, Alabama, on that date in 1986 that this defendant did knowingly and unlawfully enter or he did remain unlawfully in the dwelling of Mildred Henderson with the intent to commit a crime or crimes therein, to wit, one, menacing and/or harassment and/or assault. Now, they're not required to prove all three of those. Any one of them, if the State has convinced you beyond a reasonable doubt and to a moral certainty that that man went in there unlawfully or having entered lawfully remained in that dwelling unlawfully and that he did it with the intent to do any one of these, to menace, harass or assault, and that while effecting entry or while in the dwelling or in immediate flight therefrom, the said William Ray Minshew, was armed with a deadly weapon, to wit, a knife." (R. 123)
"....
"In order to bring in a verdict of guilty as charged in the indictment, all twelve of you must be convinced that out there in June, I believe it was, of 1986, Mobile County, Alabama, that he entered the home of the complaining witness, that he did it intentionally, that he went in there with the intent to commit a crime, that the crime that he intended to commit was one of these: either menacing, harassing or assault.
"Now, assault is defined in our law as the threatening of physical harm or violence to the person of another where you are in the position to carry out that threat if you so desire.
"Menacing, of course, is to put a person in place of danger and threaten that you will do physical injury or harm to that person.
"And harassment is somewhat along the same line: To put a person in fear and to be in a position where if you desire you can carry out your threat.
"And while effecting entry into the building or while in the dwelling or in immediate flight therefrom, you further believe beyond a reasonable doubt that he was armed with a deadly weapon, and they say in this case it was a knife; then it would be your duty to find the defendant guilty as charged in this indictment. If any one of you is not convinced beyond a reasonable doubt and to a moral certainty of the truth of all of those material ingredients of this indictment, then you could not vote for a verdict of guilty as charged. That doesn't mean that you would bring in a verdict of not guilty. In order to bring in a verdict of not guilty, all twelve of you must have a reasonable doubt of some part of this charge. By the same token, in order to find him guilty, all twelve of you must be convinced beyond a reasonable doubt and to a moral certainty that out there at that lady's house, Mildred Henderson's house, on the night that this incident *319 happened, that this defendant while armed with a deadly weapon or a dangerous instrument, a knife, that he effected entry into that house, that he went in there with the intent to commit a crime, and that he was armed with a knife." (R. 132-133)
"....
"The law in burglary first degree says that a person commits this offense when he knowingly and unlawfully enters the dwelling. A dwelling is a place where people sleep and live; not just a business building. He unlawfully enters or remains unlawfully having entered lawfully in a dwelling of anotherMildred Henderson, in this casewith the intent to commit a crime or crimes therein. And I have defined menacing or harassment or assault. And assault, I think I defined it for you just now, but to be sure, is the unlawful touching in anger or in threatening way of the person of another. And you've got to be armed with a deadly weapon. And a deadly weapon is a weapon that's designed or may be used to inflict serious bodily harm or death on the person of another." (R. 145)
Looking at the jury charges as a whole, I find that the trial court did not take a material element away form the jury's consideration. I find that the trial court amply, properly, and correctly defined burglary in the first degree. The comment, from which the appellant appeals, occurred after the original charge had been given to the jury, and after the jury was called back in a second time to further explain points of law to them.
In my opinion, at no time did the court instruct the jury that the knife was a deadly weapon. The judge was simply saying that in order for the jury to find the appellant guilty, the jury must find all of the material elements of the charge in question were provenone of which was the use of a deadly weapon. Thus, I find no basis of error to reversal in the trial court's oral charge and the court's charge as extended.

IV
The appellant contends that the trial court erred in overruling his objection to the testimony of Officer Mayo. He specifically argues that Mayo's testimony was hearsay. During the State's examination of Officer Mayo, the following occurred:
"Q Now, since you were in charge of this whole effort, would you pleaseand in that capacity I assume you knew all the moves that were being made by the police department; is that correct?
"A Yes, ma'am.
"Q How did it come about that the Mobile Police Department was able to locate him that night?
"A Received information
"MR. RATCLIFFE: Judge, I'm going to object to any information they received. That's hearsay.
"MS. MURPHREE: Your Honor, this is not being offered for the truth of the matter asserted but simply to show why certain action was taken.
"THE COURT: And I overrule.
"Q You may answer.
"A I received information that William Minshew was in the area of Long Leaf Drive near Mims Park about 9:30 that morning in possession of a sleeping bag, clothing, food articles, a large survivor type knife. And I knew he was in the area of the Henderson family and that he did not live in that area." (R. 63-64)
It is well settled that the hearsay rule applies only to statements offered for the truth of their contents as asserted. This court has generally held that it is not inadmissible hearsay for an officer to testify as to information which he received, if it provides some explanation for his subsequent actions. Adams v. State, 459 So.2d 999 (Ala.Cr.App.1984). See also Cory v. State, 372 So.2d 394 (Ala.Cr. App.1979). The testimony of Officer Mayo was not offered to prove the truth of its contents, but rather to explain his presence at the Hendersons' home on the Thursday night before the trial. As such, Officer Mayo's testimony was properly admitted at trial.

*320 V
The appellant challenges the sufficiency of the evidence alleging that the State failed to prove an essential element of the crime of burglary in the first degree. He argues that the State did not establish that he knowingly and unlawfully entered or remained unlawfully in Mrs. Henderson's house. He argues that because he was married to Mrs. Henderson's daughter he had a right to believe that he was invited or privileged to enter the house. We disagree.
In Guyton v. State, 435 So.2d 239 (Ala. Cr.App.1983), this court was presented with a similar factual situation as to the one at bar. In that case, the defendant entered the home of his wife's mother and assaulted his wife and her mother. We held that the defendant did not have permission to enter his mother-in-law's house because he and his wife were separated at the time. This court concluded that the defendant had entered the house unlawfully and, thus, we upheld his conviction for burglary in the first degree.
In this case, the appellant was separated from his wife at the time of this offense. The appellant was also under a court order to stay away from his wife. Certainly, this was ample evidence that the appellant did not have permission to enter Mrs. Henderson's home. Furthermore, Mrs. Henderson stated that the appellant did not have permission to enter her house and that he forced his way inside the house. This testimony was certainly evidence that the appellant unlawfully entered the house.
Even if the appellant had had permission initially to enter the house, there was evidence that he remained unlawfully.
"`A person "enters or remains unlawfully" in or upon premises when he is not licensed, invited or privileged to do so.' Ala.Code 1975, § 13A-7-1(4). `A person who is licensed or privileged to enter premises cannot, therefore, commit criminal trespass or burglary under the proposal.'
"....
"`A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with.' 1 Restatement of Torts 2d § 168 (1965). `One whose presence on land is pursuant to a consent which is restricted to conduct of a certain sort, is a trespasser if he intentionally conducts himself in a different manner.' Id. at 312 `A consent is terminated when the actor knows or has reason to know that the possessor is no longer willing that the actor shall enter or remain on the land.' Id. at 315."
Johnson v. State, 473 So.2d 607, 609 (Ala. Cr.App.1985).
It is apparent that this appellant "remained unlawfully" in Mrs. Henderson's house when he cut the telephone cord and then grabbed Mrs. Henderson and put a knife to her mouth. If the appellant had consent to enter the house initially, the consent terminated at this point and, thus, he remained unlawfully.
The State clearly proved that the appellant had knowingly and unlawfully entered or remained unlawfully in Mrs. Henderson's house. Thus, the trial judge correctly denied the appellant's motion for a judgment of acquittal based on the evidence presented at trial.

VI
The appellant asserts that the trial court erred in denying the appellant's motion to dismiss the indictment. More specifically, he argues that the indictment fails to sufficiently set out the charge of burglary in the first degree.
The grand jury returned the following indictment against the appellant, which states that the appellant (omitting formal parts):
"[D]id knowingly and unlawfully enter or remain unlawfully in the dwelling of Mildred Henderson, with the intent to commit a crime or crimes therein, to wit: menacing and/or harassment and/or while in the dwelling or in immediate flight therefrom, the said WILLIAM RAY MINSHEW was armed with a deadly weapon, to wit: a knife, in violation of 13A-7-5 of the Code of Alabama."
*321 Appellant maintains this indictment is insufficient because under § 13A-7-5, Code of Alabama 1975, an intent to commit a felony is required and this indictment alleges crimes which are misdemeanors with the exception of assault which can either be a felony or a misdemeanor. We find no merit to this argument. Section 13A-7-5 provides:
"(A) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
"(1) Is armed with explosives or a deadly weapon; or
"(2) Causes physical injury to any person who is not a participant in the crime; or
"(3) Uses or threatens the immediate use of a dangerous instrument."
This statute requires only the intent to commit a crime and a crime as defined under § 13A-1-2, Code of Alabama 1975, is either a misdemeanor or a felony. Furthermore, the commentaries to § 13A-7-5, Code of Alabama 1975, define crime as any felony or misdemeanor. Thus, I find that crime as used in § 13A-7-5, Code of Alabama 1975, can either be a felony or a misdemeanor.
The appellant further argues that the indictment alleged the intent to commit three crimes, alternatively, and conjunctively. Thus, there is no way to tell whether he was alleged to have intended to commit one or all of the crimes. I disagree.
Section 15-8-50, Code of Alabama 1975, provides that, when an offense may be committed by different means and intents, such means and intents may be alleged in the indictment in the alternative. Thus, it was certainly proper to charge in the alternative.
Furthermore, in United States v. Lee, 422 F.2d 1049, 1052 (5th Cir.1970), the Court stated, "[w]here a statute specifies several alternative ways in which an offense can be committed, the indictment may allege the several ways in the conjunctive, and a conviction therein will stand if proof of one or more of the means of commission is sufficient to support a jury verdict." Because of the foregoing, we also find that it was proper to charge the above in the conjunctive.
Even though such is a poor pleading practice, we nonetheless hold it was proper to charge in both the alternative and conjunctive.
In United States v. Miller, 471 U.S. 130, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985), the Court stated that it has, "long been recognized that an indictment may charge numerous offenses or the commission of only one offense in several ways, as long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment."
Even though the offenses were charged in the alternative and the conjunctive, such were still contained in the indictment. Thus, "competent defense counsel certainly should have been on notice that that offense was charged and would need to be defended against." Miller, supra, at 1814.
This court has held that an indictment is generally valid if it closely parallels the language of the statute creating the offenses. Bice v. State, 472 So.2d 440 (Ala. Cr.App.1985). See also Matthews v. State, 401 So.2d 241 (Ala.Cr.App.), cert. denied, 401 So.2d 248 (Ala.1981).
In the instant case, the indictment closely traces the statutory language set out in § 13A-7-5, Code of Alabama 1975, thus, it sufficiently sets the charge of burglary in the first degree.
The indictment also clearly apprises the appellant of the crimes for which he is charged, enabling him to adequately prepare a defense. Black v. State, 401 So.2d 320 (Ala.Cr.App.1981). Thus, the trial court correctly denied the appellant's motion to dismiss the indictment.
For the reasons stated above, the judgment of the trial court should be affirmed.