This is an appeal from the appellant's conviction for burglary in the first degree.
In June 1987, a Mobile County grand jury returned separate indictments against the appellant, charging him with burglary in the first degree, in violation of § 13A-7-5, Code of Alabama
(1975), and with the attempted murder of Patricia Sims, in violation of §§ 13A-6-2 and 13A-4-2, Code of Alabama (1975). These cases were consolidated for trial. In March 1987, the appellant was convicted in a jury trial of burglary in the first degree but was acquitted of the attempted murder charge. The appellant was subsequently sentenced to a term of 12 years' imprisonment. *Page 1009 
 I
The appellant argues that the prosecution failed to present sufficient evidence to sustain a conviction of burglary in the first degree. He therefore argues that the trial court erred in denying his motion for directed verdict of acquittal and his motion for new trial.
The elements of burglary in the first degree are set forth in § 13A-7-5, Code of Alabama (1975), which provides, in pertinent part, as follows:
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument."
In Gratton v. State, 456 So.2d 865 (Ala.Cr.App. 1984), this court noted that the statutory offense of burglary under Title 13A differs in certain respects from its predecessor statutory offense:
 "Prior to the adoption of Alabama's new Criminal Code, the statutory crime of burglary in the first degree (§ 13-2-40) required that the intent to steal or commit a felony be concurrent with the breaking and entering. However, under the criminal code definition of burglary, the intent to commit a crime may be concurrent with the unlawful entry or
it may be formed after the entry and while the accused remains unlawfully. § 13A-7-5 through § 13A-7-7 Commentary."
Id. at 872 (citations omitted) (emphasis in original). Moreover, the requirement under prior law that the intended crime be a felony has been abolished under the present statute. Rather, the intended "crime" may be either a felony or a misdemeanor. § 13A-1-2(5), Code of Alabama (1975). See also,Minshew v. State, 542 So.2d 307 (Ala.Cr.App. 1988).
The evidence presented during the State's case-in-chief tended to establish the following facts:
In March 1987, Patricia Sims and her sister, Cheryl Ainsworth, were living with their two children in a rental house. At this time, Ms. Ainsworth was dating the appellant. Although he was living with his wife and daughter in McIntosh, the appellant frequently spent the night at Ainsworth's house and had a key to the front door. The appellant, however, did not have a key to the deadbolt lock that was on the door.
Ms. Sims and Ms. Ainsworth went to several bars in the Gulf Shores area on the evening in question, returning home about 3:30 a.m. From the unlocked condition of the knob on the front door, Ms. Sims was able to determine that the appellant had come to the house while they were gone and had attempted to enter it by using his key, but was unable to do so, as Ms. Sims had engaged the deadbolt lock prior to leaving.
Sometime thereafter, Ms. Sims was talking on the telephone with Dennis Kennan, when she saw the appellant's car drive into her front yard. Ms. Sims told Kennan that the appellant had come to the house, and that "there might be trouble," and then she hung up the telephone. She then turned off all of the lights in the house. In the meantime, Kennan called the police and notified them of a possible disturbance at the residence.
When Ms. Sims told her sister that the appellant was at the house, Ms. Ainsworth responded, "I have got to hide," and then secreted herself in a closet in Ms. Sims's room. Meanwhile, the appellant walked around the exterior of the house, banging on the door and windows, yelling, "Let me in, y'all let me in." When neither Ms. Sims nor Ms. Ainsworth responded, the appellant entered the dwelling by kicking in one of the doors. Ms. Sims shouted the appellant's name, and opened her bedroom door, whereupon she saw the appellant standing *Page 1010 
in the hall with a gun in his hand. Ms. Sims told the appellant that her sister was not in the house and then stated to him, "You are scaring me, Chris, leave right now." During this time, Ms. Sims was holding a bowling pin in her hand.
The appellant refused to leave the house, and he began looking for Ms. Ainsworth. Upon finding her, he grabbed Ms. Ainsworth by the hair and pulled her out of the closet. The appellant then put his gun to the head of Ms. Ainsworth, who was screaming, "Don't kill me. Don't kill me." Ms. Sims, who was standing behind the appellant, hit him in the head with the bowling pin, causing him to drop the gun. Thereafter, the appellant began to attack Ms. Sims, beating her on the head with his pistol, and Ms. Ainsworth ran from the room and left the house. When he had subdued Ms. Sims, he pointed the gun at her, stating, "Well, I am going to kill you." Ms. Sims heard the gun make a "clicking" noise as the appellant pulled the trigger, but the weapon failed to fire. The appellant then left to find Ms. Ainsworth, and Ms. Sims crawled under her bed to hide.
Officer Stan Stabler of the Saraland Police Department was the first officer to arrive at Ainsworth's house. Officer Stabler testified that when he reached the house, he observed the appellant and Ms. Ainsworth standing in the front yard, fighting. Officer Henri Bradford, who arrived at the house just after Officer Stabler, also saw the appellant and Ms. Ainsworth struggling in the front yard. Bradford took the gun from the appellant and placed him under arrest for disorderly conduct. Bradford testified that the appellant's gun had a bullet in the chamber, and that the base of the bullet had a small indentation on it, suggesting that the gun had been fired.
The appellant argues in his brief that he had permission, privilege, and license to enter Ms. Ainsworth's home, and that, to his knowledge, that privilege had never been revoked. The appellant contends, therefore, that his burglary conviction cannot be sustained, and cites the Commentary to § 13A-7-1(4),Code of Alabama (1975), in support of his argument. Such a contention, however, ignores the substantial evidence presented by the State indicating that the appellant was clearly aware that his right to remain on the premises had been terminated. Moreover, even if the appellant's initial entry had been licensed or privileged, it is clear to this court that the license or privilege ended when he held his pistol to the heads of Ms. Sims and her sister. Minshew, supra; Johnson v. State,473 So.2d 607, 609-11 (Ala.Cr.App. 1985).
After a careful review of the record, we are convinced that the prosecution presented sufficient evidence to sustain the appellant's conviction for burglary in the first degree.
 "In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution. Johnson v. State, 378 So.2d 1164, 1169 (Ala.Cr.App.), cert. quashed, Ex parte Johnson, 378 So.2d 1173 (Ala. 1979)."
Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), affirmed, Ex parte Faircloth, 471 So.2d 493 (Ala. 1985).
 " 'The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches 'a clear conclusion that the finding and judgment are wrong.' Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962). 'The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust.' Bridges v. State, *Page 1011 284 Ala. 412, 420, 225 So.2d 821 (1969). Even though an appellate court should 'marvel that a jury would convict upon such flimsy proof,' it is 'not permitted to pass upon the weight or sufficiency of the evidence, where it may yield any rational inference of guilt.' Toles v. State, 170 Ala. 99, 100, 54 So. 511 (1911). A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). '[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.' Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960). Granger [v. State], 473 So.2d [1137] at 1139 [(Ala.Cr.App. 1985)]."
White v. State, 546 So.2d 1014 (Ala.Cr.App. 1989).
In the case sub judice, it could clearly be inferred from the testimony of Patricia Sims that the appellant understood that his privilege to enter the home of Ms. Sims and Ms. Ainsworth had been revoked. Further, it could be established from Ms. Sims's testimony that even had his entry been privileged, the appellant's actions, once inside the dwelling, terminated that privilege. Even though the testimony of Ms. Ainsworth as a witness for the defense sharply conflicted with that of Ms. Sims, the resolution of this conflict is for the jury, and not this court. Id. at 1022. Accordingly, the trial court did not err in denying the appellant's motion.
 II
The appellant next argues that the trial court erred in admitting into evidence over his objection the warrant for his arrest and the supporting affidavit executed by Cheryl Ainsworth. The documents were introduced to impeach the testimony of Ms. Ainsworth.
The record indicates that the following occurred during the prosecution's cross-examination of Ms. Ainsworth:
 "Q. And even after this incident occurred, you continued to see him and have some kind of a relationship with him?
"A. Yes, I did.
 "Q. That was even after you signed the burglary warrant and then later on you said you wanted to drop the charges to the burglary?
"A. Afterwards, yes, I did.
 "MR. JORDAN: Judge, I would like to ask the court to take judicial notice of the affidavit that was in. I don't know how — I would like to get that marked in as an exhibit.
 "MR. RIVERS: I would like to object to that Your Honor. The grand jury indictment is what brought us here today, not any — The court found probable cause down below, not because we were up here.
"MR. JORDAN: I am not arguing about that.
 "THE COURT: I understand. Buzz, you have the right to take the item from the file and have it marked as an exhibit and offer it. Then, if you do, I will give John an opportunity to interpose his objection and then I will rule on it.
 "(State's exhibit number 23 was marked for identification.)
"MR. JORDAN: Judge, we would move —
 "THE COURT: You will need to get the witness to identify the exhibit.
 "Q. State's exhibit number 23, is that your signature, Cheryl?
"A. Yes, it is.
 "MR. JORDAN: Move to introduce that as state's exhibit number 23.
 "MR. RIVERS: Your Honor, I object to that. We are here in Circuit because of a grand jury indictment. That is prejudicial. It has no bearing on what we have up here. It is brought for burglary first and the grand jury brought this indictment, not Cheryl Ainsworth. She can't drop them and she can't add them. *Page 1012 
 "THE COURT: I will allow the introduction of the evidence for the limited purpose of its value, if any, as a prior inconsistent statement." (R-114, 115)
However, prior to the introduction of the arrest warrant and affidavit, the following exchange occurred between the prosecutor and Ms. Ainsworth, without an objection by the appellant:
 "Q. All right. Now, Cheryl, did you swear to the fact that Christable Weaver did knowingly and unlawfully enter or remain unlawfully in a dwelling of Cheryl Ainsworth with intent to commit a crime therein, to-wit, an assault and while affecting entry or while in the dwelling or in immediate flight therefrom said defendant or another participant, to-wit, Christable Weaver was armed with a deadly weapon, to-wit, a Walter 380 Semi-automatic pistol in violation of the law in that. Signed March the 9th, which would have been the day after this incident. Do you remember signing that document?
"A. Yes, I did sign it."
The general rule of law in Alabama is that "[i]t is not error to allow facts to be shown over objection when they have already been proven without objection. Bush v. State, 282 Ala. 134, 209 So.2d 416 (1968); Espey v. State, 270 Ala. 669,120 So.2d 904 (1960)." Allen v. State, 390 So.2d 676, 684
(Ala.Cr.App. 1980). See also, Shaneyfelt v. State,494 So.2d 804, 808 (Ala.Cr.App. 1986). As Ms. Ainsworth had already admitted to making every material allegation contained in the arrest warrant and affidavit, without objection by the appellant, the admission of these documents into evidence was without error.
 III
The appellant next argues that the guilty verdict in his burglary case was inconsistent with his acquittal of attempted murder, and that the trial court therefore erred by denying his motion for a new trial. This Court finds no merit in the appellant's argument.
Initially, we note that "inconsistent verdicts" is not a proper ground for reversal under Alabama law. Hammond v. State,497 So.2d 558, 562-64 (Ala.Cr.App. 1986); McClellan v. State,484 So.2d 1150, 1152-53 (Ala.Cr.App. 1985). Moreover, the underlying crime on which the appellant's burglary conviction was predicated was his assault of Patricia Sims, not attempted murder. As the record contains ample evidence of the appellant's guilt as to assault, the jury's verdict should stand as rendered.
 IV
The appellant argues that the trial court erred in allowing Cheryl Ainsworth to testify, over his objection, concerning prior problems between the appellant and her. The record indicates that the following occurred during the prosecution's cross-examination of Ms. Ainsworth:
 "Q. Had the two of you had any problems prior to this that maybe you would be afraid of him sometime?
"[Objection omitted.]
 "A. We have had our fights before just like other people have."
This court in Walker v. State, 523 So.2d 528 (Ala.Cr.App. 1988), has said:
 "In a charge of a crime, 'the state may prove former acts of hostility by the accused towards the victim for the purpose of showing motive in the accused. . . . The general rule . . . is that the moving party may show the fact, but not the details of the former difficulty.' . . . 'The trial judge is vested with wide discretion in deciding how far counsel may go in eliciting "details of a former difficulty"; he should be allowed to determine when to let counsel run and when to rein him in.' "
523 So.2d 528, 532 (Ala.Cr.App. 1988) (citations omitted).
The testimony does not refer to specific details of the former difficulty, and it is therefore admissible underWalker, supra.
 V
The appellant argues that the trial court erred in allowing Ms. Ainsworth to testify as to whether he told her that he was separated from his wife while he was *Page 1013 
staying with her. The appellant contends that this testimony was irrelevant to the issues at trial and that the testimony was an adverse reflection on his character and was therefore prejudicial to him.
The record indicates that the following exchange took place during the cross-examination of Ms. Ainsworth:
 "Q. Did he tell you that he was separated from his wife at that time?
"A. Not at that time.
 "Q. So, he wasn't separated on March the 8th of '87 was he?
"A. I don't know for sure.
 "MR. RIVERS: Objection, your Honor. What relevancy does this have?
 "MR. JORDAN: Well, the defense attorney said —
"MR. RIVERS: He is not on trial for adultery.
 "MR. JORDAN: The defendant said that in his opening statement, Judge, and I have a right to see if that's the truth.
 "THE COURT: The objection is overruled. There is an issue in this case to which that's quite relevant.
"Q. Go ahead.
 "A. I don't know where he stayed when he was not with me."
Clearly, the prosecutor's question had been asked and answered twice before appellant's attorney interposed his objection. The testimony in question was already before the jury without objection; therefore, appellant's objection came too late to preserve this issue for our review. Thomas v. State,494 So.2d 840, 843 (Ala.Cr.App. 1986); Yates v. State, 390 So.2d 32
(Ala.Cr.App. 1980). See also, C. Gamble, McElroy's AlabamaEvidence, § 426.01(3) (3d ed. 1977).
Moreover, this testimony is, in fact, relevant to an issue before the jury at the appellant's trial. Ms. Ainsworth testified as a witness for the defense that the appellant helped to pay the rent and electric bill for the residence and that he kept his clothes there. Because it could be inferred from the testimony of Ms. Ainsworth that the appellant lived with her in the house, the State was properly entitled to prove otherwise.
 VI
The appellant finally argues that the trial court erred by refusing to allow Kay Dees Rogers, a rebuttal witness for the prosecution, to be questioned about a civil lawsuit that had been filed against the appellant as a result of his actions. Ms. Rogers owned the house which Ms. Sims and Ms. Ainsworth were renting at the time the burglary occurred. The following exchange occurred during cross-examination of Ms. Rogers by defense counsel:
 "Q. Do you have a damage suit against Chris Weaver for damage to your house now?
"A. Excuse me.
 "Q. Do you have a civil suit against Chris Weaver for damage to your house?
"A. No, sir; I do not.
"Q. Your insurance company does doesn't it?
"MR. JORDAN: I am going to object to that.
"THE COURT: Sustained.
"MR. RIVERS: Your Honor, it shows bias.
 "THE COURT: Sustained. What her insurance company may or may not do has nothing to do with this case.
"MR. RIVERS: No further questions."
The general rule of law in Alabama is that the defense may cross-examine witnesses for the prosecution concerning civil suits arising out of the same facts as the criminal proceeding.Burns v. State, 518 So.2d 860, 861-63 (Ala.Cr.App. 1987);Reeves v. State 432 So.2d 543, 545-46 (Ala.Cr.App. 1983). The rationale for this rule is that such an examination may show that the witness could be biased against the defendant in that the witness may have an interest in the outcome of the prosecution. Further, in determining whether such examination is appropriate, the critical consideration is not so much the identity of the filing party, as whether "there is such a close relationship between *Page 1014 
the witness and the party filing the other suit that it logically follows that [the witness] would have a similar interest in the case in which he is testifying as the party who filed the other suit could have . . . ." Malone v. State,358 So.2d 490, 493 (Ala.Cr.App.), cert. denied, 358 So.2d 494 (Ala. 1978) (trial court erred by not allowing accused charged with embezzling from employer to show, on cross-examination of employer's agent, that employer had filed suit against accused). While the Court in Malone found that the interest between the prosecuting witness and the other party filing suit were not identical, the interest or bias of the latter should be admissible to impeach the credibility of the former.
The present case presents no such problem. Apparently, Ms. Rogers had already been compensated by her insurance carrier, who then filed a subrogation claim. Because Ms. Rogers, thus, had no interest in the outcome of that litigation, it logically follows that the evidence of that civil suit could not have shown any bias on her part against the appellant. The trial court, therefore, did not err in refusing to allow Ms. Rogers to testify about that matter.
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.